Argued June 3, affirmed July 8, petition for rehearing
denied August 12, 1953

## VALDIN *v.* HOLTEEN and NORDSTROM
260 P. 2d 504

*Richard B. Maxwell* argued the cause for appellant. On the brief were Farrens & Maxwell, of Klamath Falls.

*Robert H. Foley* argued the cause for respondent. On the brief were DeArmond, Goodrich, Foley and Gray, of Bend.

TOOZE, J.

This is an action for damages for personal injuries arising out of a collision between two automobiles, brought by Lester Valdin, as plaintiff, against Albert William Holteen and Kenneth R. Nordstrom, as defendants. The jury returned a verdict in favor of defendant Nordstrom, and one in favor of plaintiff and against defendant Holteen in the total sum of $15,450. Judgments were entered accordingly. Defendant Holteen appeals.

The accident involved in this litigation occurred on Saturday, October 14, 1950, at about the hour of 11 a.m., on Fremont highway, about two miles northwesterly from Silver Lake, in Lake county, Oregon.

Fremont highway is a public highway of the state of Oregon, running in a general northwesterly and southeasterly direction between Lakeview and La Pine, in Central Oregon. It is a paved highway with its center line plainly marked with a yellow stripe. The paved portion of the highway is approximately 21 feet in width, with comparatively narrow shoulders, and with a ditch on each side. At a point approximately two miles northwesterly of Silver Lake, Fremont highway intersects what is commonly known as the Bear Flat road. This latter road is graveled, and easterly from Fremont highway is closed to travel.

Immediately prior to and at the time of the accident, plaintiff was the owner and operator of a Hudson coupe automobile. He was proceeding northwesterly along said Fremont highway, having begun his trip at Silver Lake, and being on his way to Portland. He had as a passenger in his car one Mitchell, whose destination was Klamath Falls.

At the same time defendants also were proceeding northwesterly on Fremont highway, operating a Ford

sedan automobile, and were ahead of plaintiff. There was some dispute in the testimony as to the identity of the person actually driving the Ford, but the overwhelming weight of the evidence tended to show, and the jury found, that defendant Holteen was the driver. Accompanying the defendant Holteen was his son-in-law, the defendant Nordstrom, and his daughter. All were sitting in the front seat of the car, Nordstrom on the right, and Mrs. Nordstrom in the middle. The evidence also discloses that Holteen was the owner of the Ford.

As the defendants approached the Bear Flat road intersection, they slowed the speed of the Ford to about five miles per hour (to plaintiff it appeared as though they had stopped), in order to read the road sign located on the northeasterly corner of the intersection. At that time the plaintiff, who was approaching defendants from the rear, sounded the horn on his automobile as a preliminary to passing to the left of the Holteen car, and then proceeded into the left-hand lane of the highway in the act of passing. At the time there was no traffic approaching from the north, and the left-hand lane was open and unobstructed.

While plaintiff was passing the Holteen car, a collision occurred between the two vehicles, resulting in the injuries of which plaintiff complains. There is a sharp dispute between the parties as to the cause of the accident. Each alleged and sought to prove his own theory respecting that matter. It was plaintiff's theory that defendants made a left turn and ran into the rear end of his car while he was in the act of passing. It was defendants' theory that plaintiff, after passing, drove his car sharply to the right

in his endeavor to get back in the right-hand traffic lane and, while in the act of cutting in front of defendants' automobile, struck it.

Plaintiff charged defendants with the following acts of negligence:

"1. That they failed and refused to keep any reasonable or proper lookout for other traffic using the said highway, and particularly the automobile operated by this plaintiff.

"2. That they drove said automobile directly across said Fremont Highway without first seeing that the movement could be made in safety.

"3. That they drove said automobile directly to the left and across said Fremont Highway without giving any signal or warning whatsoever.

"4. That the defendants failed to have their vehicle under control.

"5. That the defendants failed to yield to plaintiff the right of way."

Defendants filed separate answers in which they specifically denied the acts of negligence charged against them. Each defendant affirmatively charged plaintiff with contributory negligence. Although the wording of both answers is not identical, nevertheless, the substance of the charges is the same. We quote the following allegations of contributory negligence from the answer of defendant Holteen:

"(1) That the said Plaintiff drove his automobile at a high, reckless and dangerous rate of speed and at rate of speed which was not reasonable or prudent under the circumstances and conditions existing at said intersection aforesaid.

"(2) That the Plaintiff failed to keep his automobile under proper or reasonable control.

"(3) That the Plaintiff undertook to overtake and pass this Defendant's automobile and in doing

so, Plaintiff turned to the left side of said highway and before there was sufficient clearance between the front part of this Defendant's automobile and the rear of Plaintiff's automobile, Plaintiff swerved from the left half of said road to the right half of said road, causing the collision aforesaid and being the same accident as is set forth in Plaintiff's Complaint.

"(4) That the said Plaintiff failed to use his senses and faculties.

"(5) That the said Plaintiff failed to keep his car under proper, or any, control."

Plaintiff, by his reply, denied the negligence charged against him.

In prosecuting his case against defendants, plaintiff advanced the theory that defendants, then on a deer hunting trip, were engaged in a joint venture, and that both defendants would be responsible for the negligent operation of the Ford automobile, without regard to which defendant was actually driving.

Also, there was some question raised by the evidence as to which defendant was actually operating the Ford at the time of the collision.

The trial court held that the evidence was wholly insufficient to submit the question of joint venture to the jury, specifically taking that matter from its consideration. The court also held, and so instructed the jury, that under the evidence, Holteen could not be considered an agent of Nordstrom, and that if Holteen was driving, Nordstrom could not be held liable. On the other hand, the court held, and so instructed the jury, that if Nordstrom was the driver, then Holteen (being the owner of the car) could be held liable, along with Nordstrom, for Nordstrom's negligence, if any.

Defendant Holteen alleges ten assignments of error on this appeal.

His first contention is that the trial court erred in overruling his motion for a nonsuit. His motion was based on three grounds: (1) No evidence of negligence as charged on the part of Holteen; (2) that the evidence disclosed that plaintiff himself was guilty of contributory negligence as charged against him; and (3) "upon the grounds that by his own testimony in this case, the plaintiff has excluded the defendant Holteen from the responsibility for the operation of the vehicle with which his vehicle collided."

These same grounds were urged in support of defendant's motion for a directed verdict and in support of his motion for judgment notwithstanding the verdict. These latter motions were also overruled by the trial court, and error is assigned on account thereof.

■■ In considering these assignments of error, we must view the evidence in the light most favorable to plaintiff. There were sharp disputes in the testimony as to some of the material facts. We do not believe any useful purpose will be served by reciting all the testimony and the conflicts therein. We have carefully reviewed the entire record and, from our examination thereof, have concluded that there was an abundance of substantial evidence justifying submitting to the jury the question of negligence on the part of defendant Holteen. We also are of the opinion that under the evidence the question of plaintiff's contributory negligence was one of fact for the jury to determine, and not one for the court to determine as a matter of law.

Defendants principal contention under these assignments of error is based upon the third ground of his

motion as quoted above. The background thereof is found in the testimony of plaintiff. On direct examination, plaintiff testified:

"Q * * * Do you know who was driving the other vehicle?

"A The only time I saw the occupant's faces, I looked back and they were coming my direction. As I remember, there were two young people. One fellow was driving and a young lady sitting on his side.

"Q Was there any older man in the car?

"A Only the two young people, as I remember.

"Q *I ask you to look at Mr. Holteen, who sits at the end at counsel's table, left to ourselves. State whether or not it could have been Mr. Holteen you saw driving the vehicle?*

"A *As I remember, it was a younger fellow.*

"MR. MAXWELL: I would like to have the answer re-read.

"Q State whether or not it could have been Mr. Holteen driving that vehicle?

"A *As I remember, no.*

"MR. MAXWELL: Counsel concedes that answer stands for 'No'?

"MR. FOLEY: Yes.

"MR. MAXWELL: Thank you.

"Q If you can, Lester, would you describe the people as nearly as you remember, the people that were in the other car?

"A As I remember, I judge, at that time, of course, *I only saw them you might say in a flash,* they appeared, I figures either around their 30's or late 20's, and of course, out through the windshield they appeared to be of a dark, medium complexion. I won't say extremely light or extremely dark. Just medium.

"Q You said a young man and a young woman?

"A Yes.

"Q Do you recall which one was behind the driver's or steering wheel driving the car?

"A As I remember, the young man was driving the car, and the young lady was sitting on the right in the passenger seat, and there was, as I approached, someone, as I approached from the rear I noticed someone sitting in the back seat. Who it was, I couldn't tell. I saw the head bob through the windshield, and had several articles bobbing in the car, so I hadn't clear vision." (Italics ours.)

Nordstrom and his wife were the young people riding in the Ford car. The evidence conclusively shows that Nordstrom is a blonde with blue eyes.

Based upon the above testimony as to identification of the driver, defendant maintains that plaintiff is bound thereby, and that the effect is to relieve Holteen from liability herein, even though other evidence offered by plaintiff, and defendants' own admissions, showed Holteen to have been the driver rather than the "younger fellow", Nordstrom. Defendant in his brief asserts the following: "Plaintiff is bound by and limited to his personally sworn testimony as to facts within his personal knowledge."

In support of his contention, defendant quotes from the author of the note "Binding effect of party's own unfavorable testimony", appearing in 169 ALR 798, 800, as follows:

*"If a party testifies deliberately to a concrete fact, not as a matter of opinion, estimate, appearance, inference, or uncertain memory, but as a considered circumstance of the case,* his adversary is entitled to hold him to it as an informal judicial admission. The court may permit him to withdraw it upon reasonable explanation of it as due to a mistake, or may allow him to have the benefit of other evidence explaining it as a mistake; but

otherwise he cannot have the benefit of other evidence tending to falsify it.'' (Italics ours.)

■ The rules above stated do not adversely affect the plaintiff in this case. Plaintiff had never seen either of the defendants prior to the accident. The only view he had of them was a fleeting glance while passing defendants' car. His testimony at best was a mere expression of opinion. He was not testifying to any fact peculiarly within his own knowledge. To the contrary, the fact involved was one peculiarly within the knowledge of defendants. However, the true rule applicable in this case is found stated at page 803 of 169 ALR, as follows:

" 'Where also the testimony of a party relates, not to a fact peculiarly within his own knowledge and as to which he could not be mistaken, but is in the nature of an estimate or opinion as to which he may honestly be mistaken, he does not unequivocally concede that the fact is in accord with the opinion expressed, and there is no injustice in permitting the court to consider the other evidence in the case, and determine from all the evidence what the actual facts are.' '' (Italics ours.)

Here the trial court properly submitted to the jury all the evidence in the case, including what plaintiff said, and let it decide which defendant was actually doing the driving. The jury returned a special verdict, submitted by stipulation of the parties, finding as a fact that Holteen was the driver.

Moreover, upon cross-examination, plaintiff's testimony further developed that his opinion as to who was the driver of the Holteen car was based entirely upon the *impression* he received from the fleeting glance he had at the occupants of that vehicle. For example, plaintiff was asked: "As you stated, you just

had a flash impression?" He replied: "Yes, just a flash look."

■ In his answer defendant Holteen affirmatively pleaded that he was the driver of the Ford car. He also testified to the same effect, as did his passengers, defendant Nordstrom and Mrs. Nordstrom. Defendant's first assignment of error is without merit.

■ Upon conclusion of the trial, defendant Nordstrom moved the court for an order requiring plaintiff to elect whether he is alleging and contending that defendant Nordstrom was the driver of the automobile or whether defendant Holteen was the driver of the automobile:

> " * * * upon the ground and for the reason that the plaintiff, while denying himself defendant Holteen was or could be the driver, nevertheless, he has offered testimony upon his own behalf on the theory defendant Holteen was driving the automobile. It now appears the testimony is all in. Plaintiff has offered conflicting testimony, and I think the plaintiff should be required at this time to elect a definite theory of his case, as to which defendant was driving the automobile."

Defendant Holteen joined in this motion.

Defendant's second assignment of error is based upon the trial court's denial of the motion to elect. In this connection, defendant contends that "an election is required between inconsistent and contradictory claims," citing *Helzer v. Wax,* 127 Or 427, 272 P 556, and 28 CJS 1073, Election of Remedies, § 8, in support thereof.

Under the evidence in this case, the question as to which defendant was driving the Ford car was properly submitted to the jury as a question of fact. The record did not present a situation requiring an elec-

tion on the part of plaintiff. No question of election between inconsistent remedies was involved. The authorities cited by defendant do not support his contention. This assignment of error also is without merit.

■ Upon the trial, plaintiff caused to be marked for identification certain doctor, hospital, and other bills he received for services rendered in treating him for the injuries sustained as a result of the accident.

Defendants objected to the admission of these bills in evidence, and their objection was properly sustained. They did not constitute the best evidence and, of course, did not come within the "shop book" rule as to evidence.

However, during the trial one Dr. Corter, a witness for plaintiff, was permitted to refer to the charges contained in some of these bills in testifying to the reasonableness thereof. Plaintiff was permitted to testify to the charges made to him by the several doctors, etc., for the services rendered in his care and treatment, though in so testifying, he did not directly refer to the exhibits marked for identification. However, the charges to which he testified were those which Dr. Corter had said were reasonable.

The testimony of both Dr. Corter and plaintiff above referred to was admitted over defendants' objections. Defendant's third assignment of error is based thereon.

■ Plaintiff had the right to testify concerning the several charges made for the services performed in his care and treatment, or if he had paid for such services, as to the several amounts paid, but before such evidence could be the basis of a claim for special damages, it would be necessary to connect it by offering evidence that the charges or amounts paid, as the

case might be, were reasonable for the services rendered, and, of course, that the services were performed.

■ Ordinarily it would have been improper to permit Dr. Corter, as a witness and over objection, to refer to bills that were themselves inadmissible in evidence as the basis of his testimony that the charges therein set forth were reasonable. However, in the light of the proceedings hereafter referred to, such course did not constitute error in this case.

Upon the direct examination of plaintiff, he was presented the several bills for hospital, doctor, and other services performed, for the purpose of indentifying them, and testified that they were the bills he had received. At that time the following occurred:

"MR. BEEBE: *I will stipulate they are bills he has received as the same bills counsel showed me. I will further stipulate if counsel will read the amounts into the record, he will testify they are for services rendered and reasonable, and I will further stipulate I will offer no evidence to the contrary.*

"MR. MAXWELL: *I have so stipulated.*

"MR. FOLEY: You will stipulate these bills may go into the record for the jury to examine?

"MR. BEEBE: I will not so stipulate. I will stipulate the amounts may be read into the record, if a competent witness were called and would stipulate they were reasonable and the amounts were reasonable, and I have no objection to them on that ground.

"MR. FOLEY: If the Court please, I will offer evidence as to the reasonableness of the bills at a further time. I feel the evidence has a right to go to the bills and are but items from which testimony is given. As to my question to the witness, 'What are they?', if counsel is willing to admit those are bills received by Mr. Valdin attributable to in-

juries and are the bills arising from this accident.

"MR. BEEBE: *I will stipulate as to the bills displayed to me.* I assume they are the same ones Mr. DeArmond showed me. If a person with knowledge of the facts were here and called, he would testify that as a result of the accident, services were rendered to Mr. Valdin, and that those services are reasonable, and I will stipulate if you will simply read into the record the amount of the bills, the witness would say they were reasonable and offer no evidence to the contrary. *My stipulation is the amounts would be reasonable, and I don't think those pieces of paper would be admissible."* (Italics ours.)

The foregoing proceedings occurred before Dr. Corter was called as a witness. As before observed, the bills themselves were not admitted in evidence. The only information given the jury about the offered exhibits was as to the several amounts set forth therein and the testimony of Dr. Corter as to the reasonableness of the charges. Defendants stipulated that these several amounts might be read to the jury and that they were reasonable charges for the services performed. How, therefore, can the defendant Holteen legitimately claim that he has been harmed because the jury received the information he agreed it might receive, though the manner in which the information was conveyed to it was not strictly in keeping with his stipulation?

Defendant's assignment of error numbered IV is directed to the refusal of the trial court to strike certain testimony given in rebuttal by the witness Moran.

Upon cross-examination of defendant Holteen, plaintiff laid grounds for impeachment of the witness as follows:

"Q After the accident, Mr. Holteen, did you

have a discussion with a man named Moran, the state highway maintenance man?

"A I don't know the man by name.

"Q Did you have a discussion with the highway maintenance man who came out?

"A Yes, sir.

"Q *I will ask you in the presence of yourself, Mr. Nordstrom and your daughter that afternoon while you were there at the scene of the accident, you told Mr. Moran in substance these words, 'I heard a horn and stepped on it to get across the road.'* Or words to that effect?

"A I don't believe I made such a statement.

"Q You are not sure whether you did or not?

"A I did not make such a statement I am sure." (Italics ours.)

After defendants had rested their case, Ernest Moran was called by plaintiff as a witness in rebuttal. The following testimony was given on direct examination:

"Q Who did you talk with?

"A I talked with Mr. Holteen.

"Q Was Mr. Nordstrom present?

"A He was around the area. I never talked directly with him.

"Q State what was said?

"A Well, when I came up, I asked him—

"MR. MAXWELL: If the Court please, I object to any conversation other than that covered by the questions asked Mr. Holteen on the stand.

"THE COURT: That is correct, counsel. That would be improper rebuttal.

"Q State whether or not this statement was made?

"MR. MAXWELL: If the Court please, I will object to reading and suggesting questions. I think the witness can testify without having counsel read the question.

"MR. FOLEY: If the Court please, the way to approach that is to ask what the conversation was with Mr. Holteen, and if it develops anything was said that would be out of order, that should have come in on our case in chief, then I ask leave to have it admitted as part of our case in chief, so we can get on with it.

"THE COURT: Counsel, I believe you can arrive at what you want without reading questions. You can find out whether or not the man discussed the accident with Mr. Holteen.

"Q Did you have a conversation with Mr. Holteen relative to the accident?

"A Yes, I did.

"Q Would you please state what he said:

"A What he said?

"Q Yes.

"A He said that he had stopped there to read the sign, to read this signpost there, and he heard this car horn coming up from behind, up from back, and he couldn't see it at all. There was something in the way I understood it, and he stepped down on the accelerator, stomped down on the floorboard and taken off. That is the way he told me."

Defendant moved to strike the testimony as not proper rebuttal. The objection was overruled.

When the grounds for impeachment of a witness are properly laid by giving time, place, persons present, and a statement alleged to have been made by the witness, which he denies making, upon calling the impeaching witness, the proper procedure is to direct his attention to the time, place, and persons present, and then ask him if at that time and place the party being impeached made a statement, repeating the statement in the same words used in the original question. He answers the question either "yes" or "no". In this case it is apparent from the foregoing tran-

script of the testimony that plaintiff's counsel proposed to follow that procedure, because he said to the witness: "State whether or not this statement was made?" It is assumed he would have followed that up with the statement to which Holteen's attention had been called. However, defendant objected, and, because of his objection, the proper procedure was not followed. As a result, the entire conversation was related. Defendant invited this error and is in no position to complain thereof. Moreover, although the conversation as related by the witness turned out to be improper rebuttal because it did not cover the statement contained in the impeaching question put to Holteen, yet it was within the sound discretion of the trial court to permit the testimony to stand as a part of plaintiff's case in chief. Had Moran been called as a witness as a part of plaintiff's case in chief, the testimony he gave relative to his conversation with Holteen would have been admissible. The statement Holteen made to the witness corroborated plaintiff's claim that he sounded the horn on his car as a warning of his intention to pass, and it also constituted an admission that Holteen heard the warning signal. The trial court did not abuse its discretion in overruling the motion to strike.

Defendant's assignment of error numbered V is directed to the following instruction given to the jury:

"I instruct you that the driver of a vehicle in the exercise of reasonable care *must anticipate that vehicles may overtake and pass him at any point on the highway,* and he must, in order to avoid a charge of negligence, keep a proper lookout for them and keep his vehicle under such control that would enable him to avoid a collision with another person, using proper care and caution; and if you find that the driver of the Ford car when he heard plaintiff's horn, and just prior to the collision,

*failed to act as a reasonably prudent person would have done under the circumstances then and there existing, then I charge you that such defendant was negligent,* and if you find such negligence proximately caused the accident complained of then your verdict should be for the plaintiff and against the driver of the Ford car, unless you further find that plaintiff was also guilty of contributory negligence.'' (Italics ours.)

Defendant especially objects to the emphasized portions of the foregoing instruction. He maintains that a driver need not anticipate that he may be overtaken and passed at an intersection.

Section 115-331, OCLA, as amended by § 4, ch 428, Oregon Laws 1941, in part provides:

"(a) * * * * *

"(b) The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction * * * at any intersection of highways, unless such movement can be made in safety.''

This statute does not prohibit the overtaking and passing of another vehicle at an intersection except only when such movement cannot be made in safety. Primarily, the statute contemplates a situation where there is cross-traffic at the intersection; that is, traffic entering the highway from the intersecting road, or where a vehicle is lawfully making a turn at the intersection. In the absence of some such conditions at the intersection, it is just as lawful to overtake and pass a slower moving vehicle at an intersection as it is at any other place on the highway. Whether such passing at an intersection can be made in safety depends in each instance upon the particular conditions existing at the time and place of passing, and is judged in each case by the standard of how the situation might

appear to a reasonably prudent person in the exercise of due care.

■ A motor vehicle operator is not entitled to assume that he will not be overtaken and passed at an intersection, particularly at an intersection where there is no other traffic. Every operator of a motor vehicle must maintain a proper lookout for other traffic on the highway. This is a continuing duty. Although such lookout is largely confined to the road ahead and to the right and left at intersections, nevertheless, when the attention of the operator of a vehicle ahead has been called to the presence of a vehicle behind, such operator must maintain a lookout for the car approaching from the rear. 60 CJS 744, Motor Vehicles, § 322.

■ The same duty is imposed upon the driver of a motor vehicle to anticipate the lawful passing of vehicles from the rear as it is to anticipate traffic from the front and at intersections; especially is this true of the driver of a slow-moving vehicle.

■ The instruction complained of was but one in a series of instructions upon the question of lookout, and a part thereof. Immediately prior to giving the instruction in question, the court instructed the jury as follows:

"I instruct you that it is the duty of an operator of a vehicle upon the public highways of the State of Oregon to keep a lookout for other vehicles using the highway. The law does not establish any arbitrary standards in such matters but the conduct of a driver of an automobile must be measured by the degree of care which an ordinarily prudent person would have exercised under the same or similar circumstances. By lookout is meant a reasonably careful looking or watching for any object and a person is chargeable with having seen and, there-

fore, having known that which he should have seen by keeping a lookout.

"It is for the jury to determine whether under all of the facts as you find them from the evidence in this case the operator of either of the vehicles in question exercised ordinary care in the manner in which he kept a lookout. If you find that either or both drivers failed to maintain a proper lookout as defined to you by my instructions, then in that event such driver or drivers would be guilty of negligence."

The trial court did not err in giving the instruction to which objection is made.

Defendant's assignment of error numbered VI challenges the correctness of two additional instructions given the jury.

The two instructions of which complaint is made were a part of several instructions given regarding the law applicable to the overtaking and passing of vehicles. The court told the jury:

"I instruct you that the following rule shall govern the overtaking and passing of vehicles.

"The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.

"The driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on suitable and audible signal *and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.*

"Whenever the operation of a vehicle proceeding in the same direction may be effected [sic] by such action, the driver of an overtaking vehicle shall give a clearly audible signal thereof, by sounding the horn or other warning device before attempting to pass or passing such overtaken vehicle.

"If you believe the plaintiff's vehicle was overtaking and passing the defendant's vehicle and that the plaintiff gave a clearly audible signal before attempting to pass or when passing the defendant, the [sic] the defendant was required to give way to the right of the highway in favor of the plaintiff's vehicle; and further, *the defendant could not increase the speed of his vehicle until completely passed by the plaintiff's overtaking vehicle.* In this regard, if you find from a preponderance of the evidence that defendant drove his vehicle to the left or that the defendant failed to give way to the right while being passed by the plaintiff, then the defendant, driver of the Ford car, was guilty of negligence in the operation of his vehicle, *or, if you find that such defendant increased the speed of his vehicle while being overtaken by plaintiff's vehicle, then that defendant was guilty of negligence.* (Italics ours.)

■ Defendant contends that the two instructions, parts of which we have emphasized above, and, particularly, the emphasized portions, are erroneous as applied to the issues in this case. In his complaint plaintiff did not specifically charge defendants with negligence because of an increase of speed while he was in the act of passing. It is elementary that plaintiff cannot recover for any act of negligence not pleaded, even though the evidence may have disclosed its presence.

In the foregoing instructions, with the exception of the last one, the trial court simply read the provisions of the statute applicable to overtaking and passing vehicles proceeding in the same direction. § 115-330, OCLA, as amended by ch 198, Oregon Laws 1949. Under the issues in this case, as framed by the pleadings, submitting the question of an increase in speed of defendant's vehicle to the jury as a basis of negli-

gence was improper. It was error for the court to tell the jury: "or, if you find that such defendant increased the speed of his vehicle while being overtaken by plaintiff's vehicle, *then that defendant was guilty of negligence.*" (Italics ours.) Although a correct statement of the law, under the issues in this case it was abstract.

Plaintiff contends the instructions were proper under his charge of negligence that defendants failed to yield the right of way. We cannot subscribe to that theory. Under the facts in this case, "increase of speed", if there was an increase of speed, had nothing whatever to do with the right of way. Ordinarily the term "right of way" is applied to the right of precedence at intersections, and as between individuals and moving vehicles. However, the term may be used in different senses. Under the theory of plaintiff's case, it is manifest that in his use of the term in his complaint, he had in mind his statutory right to pass to the left unhindered, having given the proper signal of his intention so to do. Viewed in the light of the other allegations of plaintiff's complaint respecting the manner in which the collision occurred, "failure to yield the right of way", as a specific act of negligence, could refer only to the act of defendants in turning to the left while plaintiff was in the act of passing, and not to an increase of speed.

Although the instruction was abstract and erroneous as applied to this case, yet that does not necessarily mean that reversible error occurred on account thereof.

In *Wilson et ux. v. Kruse,* 199 Or 1, 258 P2d 112, we said:

"The instruction was undoubtedly abstract and

therefore erroneous, but under the liberal rule laid down in later cases, particularly Godvig v. Lopez, 185 Or 301, 202 P2d 935, before a reversal is ordered it must appear that such an instruction is prejudicial, and in determining such, 'The court must be able to see that under the circumstances disclosed by the record, the jury may have been, and probably were, misled, to the injury of the complaining party.' "

Defendant contends that the instruction was prejudicial, particularly so because of the testimony of Moran heretofore mentioned.

■ It has become hornbook law in this state that instructions given a jury must be considered as a whole. The instructions of the court in this case were very complete upon every phase of the case. The theories of the respective parties as to how the accident happened were fully and correctly presented to the jury. Upon several occasions following the giving of the abstract instruction complained of, the court specifically instructed the jury that plaintiff could recover only upon proof of one or more of the allegations of negligence alleged in the complaint. For example, the court told the jury:

"Upon the issue of the negligence of defendants, plaintiff is limited to the matters charged as negligence against defendants in plaintiff's complaint, and no other matters can be considered by you in connection with this question."

And again:

"In order for plaintiff to prevail upon his complaint against defendants, it is necessary that you should find by a preponderance of satisfactory evidence that defendants were guilty of negligence as alleged in plaintiff's complaint, and that such negligence was a proximate cause of the injuries

claimed by plaintiff and that plaintiff was not himself guilty of negligence which contributed to the collision.''

Further, the court said:

"I instruct you that plaintiff is limited to the theory asserted by him in his complaint and in the course of the trial.

"Even though, upon the case as a whole, it might appear that other theories could be advanced, I instruct you that you can consider no other theory in this case than that submitted by plaintiff.

"Not only is plaintiff limited to the matters specifically charged as negligence in his complaint, but he is limited to the theory of happening which he has set forth in his complaint and has supported throughout the trial and nothing else can be considered by you upon the question of defendants' alleged negligence and plaintiff's alleged contributory negligence.''

The trial court also called attention to the specific acts of negligence and of contributory negligence charged, separately instructing as to each thereof. Also, though not required to do so, the court gave defendant's requested instruction upon the defense of unavoidable accident. We have held that is not an affirmative defense. *Denton v. Arnstein,* 197 Or 28, 250 P2d 407, 416; *Frangos v. Edmunds,* 179 Or 577, 611, 173 P2d 596.

Aside from the error contained in the questioned instruction, an examination of the instructions as a whole discloses an exceptionally well prepared, complete, and accurate set of instructions.

Under the pleadings and the evidence in this case, the factual dispute between the parties as to how the accident happened was clear-cut. It was reduced to a simple problem. On the one hand, it was plaintiff's

contention that defendants wrongfully made a left-hand turn while he was in the act of lawfully passing their vehicle and, while so doing, collided with the rear of his car. On the other hand, defendants pleaded and sought to prove on trial that the collision was caused by plaintiff's violation of the law in cutting back to the right side of the highway before such movement could be made in safety. Everything else in the case was secondary to these two basic theories, theories that were in direct conflict with each other. Lookout, control, right of way, and speed were but mere incidents to the principal controversy. With the main issue as simple as it was, it is difficult to believe that the jury was misled in any respect by the single and more or less isolated abstract statement of law made by the court.

▆ Considering the record as a whole, in the light of all the instructions given, and particularly in view of the meticulous care exercised by the trial court in admonishing the jury that plaintiff could recover only upon the theory and specific acts of negligence alleged in his complaint, we are of the opinion that the error complained of was harmless to defendant, and that it does not constitute reversible error.

▆ Assignments of error numbered VII, VIII, IX, and X relate to certain requested instructions. Defendant's requested instructions numbered III and IV½, being the basis for assignments of error VII and VIII, respectively, were founded upon the same contention urged as to assignment of error numbered I, supra; that is, that plaintiff was bound by his testimony respecting the identity of the driver of defendants' vehicle. The court did not err in refusing to give those requested instructions.

By assignment of error IX, defendant charges that the court erred in refusing to give his requested instruction numbered IX, subparagraph (a), reading as follows:

"It is the theory of plaintiff in this case that the accident now under consideration resulted from defendant's automobile deviation from a direct course of travel along the highway, or in making an abrupt left turn."

As to this requested instruction, defendant says: "Defendant is entitled to have a concise statement of plaintiff's theories given to the jury", citing the following authorities: *Severy v. Myrmo,* 186 Or 611, 207 P2d 151; *Bailey v. Opp,* 159 Or 301, 77 P2d 826, 80 P2d 40; *Anderson v. Wallowa National Bank,* 100 Or 679, 198 P 560.

The authorities cited by defendant do not support his contention that *a defendant is entitled* to have a concise statement of *plaintiff's* theories given to the jury. They do support a rule that the court should instruct the jury on the law applicable to all theories of the case which are supported by competent and substantial evidence. They also support the rule that each party, upon request, is entitled to have his theory of the case submitted to the jury if there is substantial evidence to support such theory. For instance, in *Severy v. Myrmo,* supra, at page 614, this court, after quoting the provisions of § 5-308, OCLA, respecting the duty of the court to instruct the jury as to the law, stated:

" * * * In construing this statute, this court has held that *each party* is entitled to have *his theory* of the cause submitted to the jury if any evidence has been received tending to support such theory. This is a court of review, however. Failure

of a trial court to instruct the jury upon the law applicable to *a party's theory* of the case may be assigned as error on appeal only if predicated upon the court's refusal to give a requested instruction which clearly, concisely, and accurately stated the law in question." (Italics ours.)

However, the record discloses that the trial court fully covered the subject matter of defendant's requested instruction. The court told the jury:

"In this case, the plaintiff has alleged that the defendants drove their automobile directly to the left and across the Fremont Highway without giving any signal or warning whatsoever, and that the defendants drove said automobile directly across the Fremont Highway without first seeing that the movement could be made in safety."

In other instructions the court further amplified the position of plaintiff. As before stated, the respective theories of the parties were thoroughly presented to the jury. Defendant's assignment of error lacks merit.

By his assignment of error numbered X, defendant alleges that "the court erred in modifying defendant's requested instruction XVII (b) by eliminating therefrom the portion reading as follows:

"The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction * * * at any intersection of highways, unless such movement can be made in safety."

The first part of the instruction which the court gave reads as follows:

"I instruct you that at the time and place of the collision which is the subject of this action there were in effect statutes of the State of Oregon which read as follows: 'The driver of a vehicle overtaking another vehicle proceeding in the same

direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle'.''

The court did not err in modifying the requested instruction by eliminating therefrom that portion referring to passing at intersections. The part eliminated is a quotation of § 115-331, OCLA, as amended by § 4, ch 428, Oregon Laws 1941, hereinabove set forth as a part of our discussion of defendant's assignment of error numbered V. This statute sets forth a separate and distinct rule of the road.

An examination of defendant's answer fails to reveal a specific charge of negligence based upon an alleged violation of this particular statute. Just as plaintiff is bound by and limited to the specific acts of negligence charged in his complaint, so defendant is bound by and limited to the specific acts of contributory negligence charged in his answer. This rule is so firmly established in this state that it is unnecessary to cite authorities in support thereof. Under the pleadings, ''overtaking and passing at an intersection when such movement could not be made in safety'' was not an issue. It would have been error had the trial court submitted the provisions of that statute to the jury.

That completes our discussion of the several assignments of error. We deem it proper, however, before closing this opinion to comment upon language found in the defendant's brief, which reflects upon the fairness of the trial judge in his conduct of the trial of this case. The trial was presided over by the Honorable Charles H. Combs, who died on July 1 of this year. Judge Combs, during many years of distinguished

service as a circuit judge, held court in most of the judicial districts of the state and made a profound impression upon litigants and the bar by his uniform fairness and impartiality. These qualities he exhibited to a marked degree in the trial of this case. The criticisms referred to are baseless.

The judgment is affirmed.