HEBER M. TRACY, Appellant, *v.* HARRY M. POLLOCK, Respondent.

No. 4597

September 30, 1963                    385 P.2d 340

[Rehearing denied October 28, 1963]

*Vargas, Dillon & Bartlett,* and *James P. Logan,* of Reno, for Appellant.

*Loyal Robert Hibbs,* of Reno, for Respondent.

# OPINION

By the Court, McNAMEE, J.:

On March 21, 1961 one Tyler was driving his Falcon from Reno to Tonopah. En route he picked up respondent Pollock, a hitchhiker. Fourteen miles south of Fallon the motor stopped because the car had overheated, and the car coasted to a stop in the right-hand lane of the highway. Both Tyler and Pollock got out of the car. Appellant Tracy, 70 years of age, and his wife approached from the rear. Tracy saw the stalled vehicle when he was 100 feet away. He applied his brakes and swerved to the left, but struck the Tyler car with the right front of his car. The collision caused the Tyler car to overturn and hit Pollock, resulting in serious injuries to Pollock. The accident happened approximately 6:30 p. m. Tracy had his lights on dim at the time. There was a conflict in the evidence whether Tyler had his lights on. A disinterested witness, Clyde Sam, who was driving north, testified that he saw the Tracy car approaching at an estimated speed of between sixty and eighty miles an hour. Tracy estimated his speed to be approximately fifty miles an hour, which he considered a safe driving speed for him at the time.

The jury's verdict was for Pollock. This is an appeal from the judgment based on the verdict, from the order denying appellant's motion to set aside the verdict and judgment, from the order denying the motion for a new trial, and from the order denying the motion for summary judgment.

The two errors assigned are:

1. The trial court erred in admitting evidence of Tracy's diminished vision, discovered some months after the accident.

2. The trial court erred in instructing the jury on the range of vision rule.

During his examination as an adverse witness Tracy testified that at the time of the accident he was not wearing glasses. He had had his eyes examined in 1956 and had taken a driver's test in 1959. Prior to the accident he wore glasses only when he worked in a carpenter shop and they were safety glasses. When asked if he had defective eyesight after the accident the objection of his counsel to the question was sustained. He testified that on the day of the accident his eyesight was not defective. Without objection Tracy testified that the accident affected his ability to see at a distance, and that at the time of the trial he was required to wear glasses when driving his car. He first noticed a change about three months after the accident. His counsels' motion to strike this testimony was denied. Apparently, it is the denial of this motion to strike which furnishes the basis of appellant's first assignment of error.

If the court erred in allowing such testimony to remain in the record, and in this connection it must be noted that no objection to this later line of questioning was made until after the propounded questions had been answered, the error, if any, was cured by the testimony of Dr. Clarke, a witness on behalf of respondent. He testified that when he examined Tracy's eyes on March 27, 1962 Tracy stated that he had been refused a driver's license in July 1961 (about four months after the accident), because his visual acuity was not adequate and Tracy then admitted that he had "slowly been losing

vision over the last year to 16 months." Dr. Clarke further testified that Tracy's diminished vision was attributable to senile cataracts and in his opinion Tracy had faulty vision at the time of the accident. Appellant's counsel concede that if appellant had knowledge that his eyesight was defective prior to the accident, the jury properly could find that Tracy was negligent. This declaration by Tracy, being relevant to the issue of negligence and admissible as an admission of a party, created a factual question whether Tracy had impaired vision at the time of the accident and, if so, whether he had knowledge thereof. Valdin v. Holteen, 199 Or. 134, 260 P.2d 504; Bonebrake v. McCormick, 35 Cal.2d 16, 215 P.2d 728.

With respect to the second assigned error we conclude that the trial court properly instructed the jury regarding the "range of vision" rule as follows:

"It is the duty of a driver of a motor vehicle using a public highway in the nighttime to be vigilant at all times and to drive at such rate of speed and to keep the vehicle under such control that, to avoid a collision, he can stop within the distance the highway is illuminated by its lights."

In Rocky Mountain Produce Trucking Co. v. Johnson, 78 Nev. 44, 369 P.2d 198, where the facts were essentially the same as here, the giving of the identical instruction was approved by this court. Although in this case there was a gradual curve in the road, and none in Rocky Mountain, appellant testified that he could see around the curve for approximately five miles[1] and that the accident occurred between 500 and 600 feet beyond the curve. The lower court did not rule as a matter of law that appellant was negligent but submitted that issue

---

[1]The distance of one's range of vision over Nevada deserts, because of the unobstructed vastness, may be difficult for many to comprehend.

to the jury. The jury properly could find under the conflicting facts submitted to it that Tracy at the time of the accident was not performing the duties required of of him.

The judgment and orders appealed from are affirmed.

BADT, C. J., and THOMPSON, J., concur.