BILLIE STIFF, APPELLANT, v. RUTH F. HOLMES, INDIVIDUALLY AND AS GUARDIAN AD LITEM OF PATRICIA R. McDONOUGH, RESPONDENT.

No. 5571

February 10, 1969                    450 P.2d 153

*Richard P. Wait,* of Reno, for Appellant.

*Echeverria & Osborne* and *John T. Coffin,* of Reno, for Respondent.

**OPINION**

By the Court, COLLINS, C. J.:

Billie Stiff appeals from a denial of her motion for a new trial. We agree with her specifications of error, reverse the order and remand the action for a new trial.

On June 15, 1963, appellant Billie Stiff, in her jeep station wagon, drove a group of girls including the plaintiff Patricia McDonough to Reno from Lovelock for a Rainbow Girls' State Convention. Appellant returned to Lovelock that same day. On Monday, June 17, appellant returned to Reno to pick up the girls and take them back to Lovelock. She left Lovelock about six o'clock, and upon arriving in Reno attended the Grand Assembly Ceremonies that evening. After the ceremonies the girls gathered up their belongings and, after a stop at the Sparks Nugget Coffee Shop, they proceeded, at about 2:00 a.m., to drive back to Lovelock.

Respondent Patricia McDonough was riding as a guest in the back seat and not as a passenger for compensation under Nevada's guest statute.

Prior to June 18, 1963, defendant Bing Construction Co. had entered into a contract with the Nevada State Highway Department for a highway construction project on Interstate 80, east of Sparks, Nevada. This project included construction of interchanges and overpasses at Happy Valley, Nevada.

At the time of the accident on June 18, 1963, construction on this project was almost complete. The main traveled lanes of traffic were open to the public. As one progressed east on Interstate 80 and approached the Happy Valley interchange there existed an off-ramp which served as an exit for eastbound traffic. A motorist using that off-ramp would make a six-degree turn and travel up a 2.68 percent grade to the top of the ramp. The distance from the throat to the top of the ramp was approximately 750 feet. From the top one could turn north and travel over the highway or turn south into the Happy Valley area, or could angle to the left and go down an on-ramp back onto Interstate 80.

The ramp was recently paved and in such a nearly completed stage that vehicular traffic would have no difficulty in driving up it. It was not open to the general public as of June 17, 1963, and at the end of the working day four small A-frame barriers, at least three of which were equipped with flashers, were placed approximately four feet apart across the throat of the off-ramp adjacent to the main traveled lanes of traffic on Interstate 80. There were no signs indicating that the road was closed and nothing other than the four A-frame barriers to impede traffic from using the off-ramp. There were no white lines on the main traveled lanes of traffic, nor were there any markings or guard rails on the ramp, and there was no stop sign at the top of the ramp.

Appellant testified that she was driving 35 to 40 miles per

hour from the time she left Sparks, Nevada. Because of her speed she was driving in the right-hand lane close to the shoulder. She entered the off-ramp without realizing she had left the main-traveled lane of Interstate 80. She was not aware of any danger until she heard one of the girls in the front seat scream, at which point she applied her brakes but was unable to prevent her automobile from going over the embankment at the end of the off-ramp, 40 to 50 feet to the railroad tracks below.

Officer Ciardella, who investigated the accident, testified that after the accident there were three A-frame barriers upright at the throat of the ramp; one was at the right edge of the off-ramp and two at the left edge. He noticed portions of a broken barricade between Interstate 80 and the ramp but could not say whether it was damaged during the accident in question.

There was testimony by employees of Bing Construction Company that in the past members of the general public had used the off-ramp in the evening, moving aside the A-frame barriers and failing to replace them. Appellant and others in the car testified that they saw no barriers; that they did not have a sensation of going up hill or turning to the right, and that the jeep in which they were traveling did not strike an A-frame barrier or any other object prior to going over the embankment.

The posted speed limit through the construction zone was 45 miles per hour, but because of the increased danger at the Happy Valley interchange, the speed limit was 25 mph as indicated by a sign at the throat of the off-ramp.

1. Appellant contends it was prejudicial error for the lower court to instruct the jury on the duty of ordinary care of a driver in a case such as this, where the driver's liability must be predicated upon intoxication, gross negligence or willful misconduct. NRS 41.180. Specifically, appellant objects to instruction 21, which reads:

"It is the duty of the driver of a motor vehicle, using a public highway to be vigilant at all times and to keep the vehicle under such control that to avoid a collision he can stop as quickly as might be required of him by events that would be anticipated by an ordinarily careful driver in like position."

and instruction 22, which reads:

"It is the duty of the driver of a motor vehicle, using a public highway in the nighttime to be vigilant at all times and to drive

at such a rate of speed and to keep the vehicle under such control that, to avoid a collision, he can stop within the distance the highway is illuminated by its lights."

Some courts have held ordinary negligence instructions on a host-guest situation are confusing and should not be given. See Lewis v. Oliver, 271 P.2d 1055 (Colo. 1954).

But we prefer the rule stated in Rogers v. Southern Pacific, 227 P.2d 979 (Ore. 1951), where the court said:

"[I]t is entirely proper in a gross negligence case to instruct the jury on the meaning of negligence. In its simplest definition gross negligence means nothing more nor less than 'great negligence.' How it is possible to reach the conclusion that a party has been guilty of gross negligence without an understanding of the meaning of the term negligence is something difficult to conceive."

See also Nist v. Tudor, 407 P.2d 798 (Wash. 1965); Ratzburg v. Foster, 398 P.2d 458 (Mont. 1965); Southern v. Hunt, 132 S.E.2d 132 (Ga.App. 1963); Osborn v. Chapman, 384 P.2d 117 (Wash. 1963); cf. Scott v. Smith, 73 Nev. 158, 311 P.2d 731 (1957), where this court held that a city speed ordinance establishing the standard of due care as to speed, was admissible evidence in a gross negligence case.

We doubt a jury could determine whether a party was guilty of gross negligence without an understanding of the meaning of ordinary negligence. Fossi v. George, 228 P.2d 798 (Ore. 1951). But the purpose of the instruction must be made clear so that the jury will not be confused as to the standard of care applicable to the defendant. Smith v. Laflar, 20 P.2d 391 (Ore. 1933); Osborn v. Chapman, supra; and see Wells, Inc. v. Shoemake, 64 Nev. 57, 177 P.2d 451 (1947).

Nowhere in the instructions given by the lower court was the jury told that instructions 21 and 22 were given only for the purpose of explaining the difference between ordinary and gross negligence. We think this was error.

2. Appellant also contends it was prejudicial error for the court to give instruction 22, quoted above, known as the "range of vision rule," or the "assured clear distance rule." While we would not otherwise decide the point, because there will be a new trial we feel the lower court erred in giving the instruction in this case.

Nevada has no statute imposing the rule. It has been approved, however, by court decision. See Rocky Mountain Produce Trucking Co. v. Johnson, 78 Nev. 44, 369 P.2d 198 (1962); Tracy v. Pollock, 79 Nev. 361, 385 P.2d 340 (1963).

The rule that a driver must see objects and stop within the range of his headlights should not apply to holes, bumps or depressions in the road against which the lights do not shine and which may not be more noticeable than a shadow on the surface of the road. See Jacobs v. Jacobs, 74 So. 992 (La. 1917); Gayle v. Department of Highways, 205 So.2d 775 (La.App. 1967), cert. denied 207 So.2d 538; Granger v. Travelers Ins. Co., 167 So.2d 211 (La.App. 1964), cert. denied 168 So.2d 268; Applegate v. Harshman, 186 N.E.2d 763 (Ohio App. 1962); City of Summerville v. Woodard, 104 S.E.2d 507 (Ga. 1958); Crawford v. City of Wichita, 39 P.2d 911 (Kan. 1935); Martin v. J. A. Mercier Co., 238 N.W. 181 (Mich. 1931).

The rule should not apply in certain circumstances which are clearly demonstrated here. The off-ramp suddenly, without warning, ended in a 45-foot embankment drop-off. A motorist could not observe such condition until well after the limits of the illumination by the headlights of his automobile had passed over them. There was nothing for the headlights to illuminate.

There is no evidence to support respondent's contention that the "range of vision" rule should apply because appellant struck the barrier at the commencement of the off-ramp.

Accordingly, if upon retrial the same evidence is presented, instruction 22 should not be given.

The cause is remanded for a new trial.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.