Argued March 21, affirmed April 17, 1957

# CALIFF *v.* NORMAN

310 P. 2d 319

*Dale Jacobs* argued the cause for appellant. On the brief were Uney & Jacobs, Oregon City.

*Glenn R. Jack,* Oregon City, argued the cause for respondent. With him on the brief was James O. Goodwin, Oregon City.

Before LUSK, Presiding Justice, and ROSSMAN, WARNER and KESTER, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment of the circuit court which awarded the plaintiff $10,000 damages for personal injuries which he claims he sustained through the negligence of the defendant. The judgment was based upon a verdict. The defendant-appellant presents four assignments of error. Before considering them we will state some general facts.

November 7, 1952, 7:15 a. m., while the plaintiff was driving his car northerly on Highway 43 in Clackamas county, he entered the intersection of that thoroughfare and Cummings Hill road. The defendant's car had already entered the intersection and as the plaintiff's car drew alongside upon the left for the purpose

of passing the defendant's, the latter turned to the left and in that manner the collision occurred which underlies this action.

◼ The first assignment of error is based upon the following instruction which was given to the jury:

"By proximate cause is meant the thing that actually caused the injury. It need not be the only cause, but it must be one of them and such as might be reasonably foreseen as leading to the injury. A person may do a negligent act, but, unless that negligence directly causes injury, it is not the proximate cause and such person is not responsible."

This language closely parallels the following excerpt from *Brown v. O. W. R. & N. Co.,* 63 Or 396, 128 P 38:

"* * * By 'proximate cause' is not meant the last act of cause or nearest act to the injury, but such act, wanting in ordinary care, as actually aided in producing the injury as a direct and existing cause. It need not be the sole cause, but it must be a concurring cause such as might reasonably have been contemplated as involving the result under the attending circumstances."

That passage received approval in *Baker v. State Industrial Accident Commission,* 128 Or 369, 274 P 905, and *Ludwig v. Zidell,* 167 Or 488, 118 P2d 1073.

The exceptions taken by the defendant-appellant to the instruction follow:

"I merely want to say that my exception relates to the definition of proximate cause in that in its brevity it does not fully cover the issues of proximate cause * * *. I think, particularly of proximate cause and contributory negligence, they were too abstract, and that is about the only thing."

The case at bar presents no conflict between causes of injury similar to that in the time honored Squib Case (*Scott v. Shepherd,* 2 W. Blackstone's Reports

892). No contest exists in the instant case between causes, one remote and another immediate, or between one which is near at hand and another removed. In truth, the chief issue between the parties at the trial did not bear upon the proximity of any cause, but upon the countercharges of negligence. The plaintiff charged that the defendant was negligent, and the defendant retaliated with a like charge against the plaintiff. It soon became evident that their acts, whether negligent or otherwise, merged and brought the two cars together, resulting in the plaintiff's injuries. Manifestly, their acts were simultaneous. It cannot be said that the act of either was remote, either in time or place, and the act of the other immediate. The issues between the parties did not draw out the distinctions which sometimes call for detailed instructions upon the subject of proximate cause.

There is nothing mysterious in the law's treatment of the cause of an injury. Although a Squib Case rarely presents itself, it is routine with some trial judges to instruct the jury in every negligence action as though all cases of that kind involve several possible causes, none of them equal in time and space to any of the others. Generally, however, proximate cause is dependent upon the facts of the particular case. Restatement of the Law, in an effort to rid "cause" of the successive layers of patina imparted to it by the many definitions of "proximate cause," has discarded the latter term and adopted the phrase "legal cause."

We do not believe that the jury had any difficulty, after hearing the challenged instruction, in understanding that proximate cause means the wrongful act which inflicted the injury. Certainly, the attacked instruction can very successfully cope with the exceptions. We dismiss the first assignment of error as lacking in merit.

■ The second assignment of error is based upon the refusal of the trial judge to instruct the jury that it is the duty of a motorist

> "to keep a lookout for other vehicles using the highway. * * * By lookout is meant a reasonably careful looking or watching for any object and a person is chargeable with having seen and, therefore, having known that which he should have seen by keeping a lookout."

The highway upon which the collision occurred is a through road; that is, stop signs are posted at all entryways to it. It is paved to a width of two lanes separated from each other by a yellow line. The roadway is straight for a long distance as the motorist approaches Cummings Hill road from the south, being the direction from which the plaintiff and the defendant came. The plaintiff swore that on the morning of his accident visibility was "very good." He avowed that he was thoroughly familiar with the road and that he drove along it every day on his way to his place of employment in Portland. He swore that he saw the defendant's car for some time before he undertook to pass it. According to his account, he observed two cars ahead of him as he approached the intersection where he was destined to meet with the mishap. The defendant's car was ahead of the other. The plaintiff claimed that when he had drawn near the first of the two, he sounded his horn and passed it. Shortly, when the front of his car was opposite the rear left fender of the defendant's, the plaintiff undertook to pass it. At that time, according to him, the defendant's car was about two feet east of the center line of the pavement. He was positive that he (plaintiff) sounded his horn. When the plaintiff was in the position just described, "I noticed a car door opening," so he said, and simul-

taneously the defendant turned his car sharply to the left and the impact occurred. By "a car door opening" the plaintiff referred to the defendant and the left front door of his car. The defendant did not look to the rear or to the left before he undertook to turn. He depended upon his rear-view mirror in which he saw three cars to his rear. He did not believe that he gave a signal by opening his door—his words were "I believe I signaled with my arm," but the record warrants a belief—if the jury drew one to that effect—that the glass to the left of the defendant was virtually shut. The defendant acknowledged that in his accident report he wrote that he signaled with his door. If we have not discerned the facts correctly, counsel will have to assume much of the blame. A blackboard was employed during the trial and the successive witnesses placed upon it portrayals of the evidence, but the blackboard is not before us. In behalf of the assignment of error, the defendant's brief argues:

"In the instant case, the defendant-appellant alleged that plaintiff was contributorily negligent in failing to keep a proper lookout. Because the plaintiff contended he sounded his horn before attempting to pass the defendant, and defendant contends the plaintiff failed to heed and abide by his signal, the question of lookout becomes a material part of defendant's theory of his case, which he was entitled to have the jury consider."

The foregoing review of the evidence indicates that the plaintiff maintained a lookout and saw the defendant, not only at the crucial moment, but also for some distance before the cars reached the intersection. Thus, we see that the plaintiff freely charged himself with notice of the defendant's presence upon the highway, and even with knowledge of the "car door opening." The defendant's brief calls attention to nothing sub-

stantial which the plaintiff failed to observe. The instructions told the jury:

> "The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any steam or electric railway grade crossing nor at any intersection of highways, unless such movement can be made in safety."

The words were taken from ORS 483.308(3).

Although we believe that in cases such as this one, the jury should be told that a motorist must maintain an adequate lookout, we do not think that the omission so to do in this instance constitutes an error "substantially affecting the rights of the appellant" within the purview of ORS 19.120. We do not sustain this assignment of error.

■ The third assignment of error is based upon the refusal of the trial judge to give to the jury the following instruction which the defendant requested:

> "I instruct you that every motor vehicle operator passing at an intersection, regardless whether or not he has sounded his horn indicating his intention to pass, is under a duty to anticipate that the vehicle he is passing may turn left into the intersecting road. This duty is a continuing duty and the driver of the passing vehicle must keep and maintain such a lookout and have his car under such control that he is able to stop, swerve or avoid a collision if the vehicle he is passing makes a left turn."

ORS 483.126 says:

> "(1) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety.  *  *  *  Whenever the operation of any other vehicle may be affected by such movement

he shall give a proper signal which is plainly visible to the driver of such other vehicle of the intention to make such movement.

"(2) The signal required by subsection (1) of this section shall be given either by means of the hand and arm or by an approved mechanical or electrical signal device. \* \* \*

\* \* \*

"(3) Whenever the signal is given by means of the hand and arm, the driver shall indicate his intention to:

"(a) Turn to the left by extending his hand and arm horizontally from and beyond the left side of the vehicle."

In *Minugh v. Royal Crown Bottling Co.* (Tex Civ App), 267 SW2d 861, the facts were substantially similar to those in the case at bar. When the plaintiff's motorcycle and the defendant's truck were approaching an intersetcion from the same direction, the plaintiff undertook to pass the truck to the left. At that juncture the truck turned to the left without giving a signal, and a collision occurred. In summarizing the effect of traffic regulations, the decision, referring to the truck driver, said:

"\* \* \* He was further required to turn neither to the right or left, out of the lane he was in, without giving a proper signal and ascertaining that such turn could be made in safety.

"Appellant [plaintiff] had a right to presume that if the driver of appellee's truck was intending to make a left turn, he would have driven over into the left-hand lane and signaled his intention for at least one hundred feet before attempting to make a left turn. He had a right to presume that the driver of appellee's truck would not attempt to make a left turn out of a right-hand lane without giving a proper signal. Appellant had a further right to presume that the driver would not turn, either to

the right or left, from the lane in which he was traveling, without first giving a proper signal and ascertaining that such turn could be made in safety.

\* \* \*

"A driver of a motor vehicle which is occupying the left lane of a two-lane, one-way arterial highway is not required to foresee that the driver of a motor vehicle which is occupying the outside or right-hand lane of such highway, will in violation of the law attempt to make a left turn from said lane, across the left lane, without giving any signal, and when it cannot be done in safety."

From *Zint v. Wheeler* (Ky), 169 A 52, we take the following:

"\* \* \* The decedent was entitled to assume that no car would be turned into his path from his left without any signal and so as to require him to turn his own machine in that space of time to avoid a collision and at a distance of only about 60 feet from where he entered the intersection. If negligence of the defendant had thus created an emergency, under the conditions the law did not put upon the decedent the legal responsibility to avoid the collision."

From *McWright v. Providence Telephone Co.*, 47 RI 196, 131 A 841, we take the following:

"\* \* \* Plaintiff properly could assume that defendant's driver would recognize plaintiff's right to pass after his signal had been given. Babbitt on Motor Vehicles (3d Ed.) § 505; Huddy on Automobiles (7th Ed.) § 440. He might have interpreted defendant's slowing down as a recognition of plaintiff's expressed intention to go by, instead of being caused by defendant's intended left turn, particularly in view of plaintiff's failure to see any hand or other warning signal. Defendant's driver, because in the lead and traveling at the maximum statutory rate, had not the right to assume that no one would pass him. Defendant admits it would not

be warranted in suddenly turning to the left without warning and without regard to conditions of travel following. If its driver did so he alone may have been responsible for the accident. Babbitt on Motor Vehicles (3d Ed.) § 507; Overton v. Bush, 2 Ala App 623, 56 So 852.''

We find no merit in this assignment of error.

■ The fourth assignment of error is based upon an instruction given to the jury, the substance of which is ''the indicated speed is fifty-five miles per hour.'' The reference was to the scene of the accident. The exception follows:

''* * * the area is not open area, and at least, there is sufficient evidence on the point so that the entire speed should not have been given to the jury and they then decide on that.''

ORS 483.104 provides:

''Any speed in excess of the speeds designated in this section or under ORS 483.106 or 483.108 shall be prima facie evidence of violation of ORS 483.102. The speeds designated in this section are:

(1) Twenty miles per hour:
* * *

(c) In any business district.
* * *

(2) Twenty-five miles per hour:
(a) In any residence district.
* * *

(3) Fifty-five miles per hour in other locations.''

ORS 483.002 says:

''As used in this chapter, except where the context otherwise requires:
* * *

(3) 'Business district' means the territory contiguous to a highway when 50 per cent or more of the frontage thereon for a distance of 600 feet or

more on one side, or 300 feet or more on both sides, is occupied by buildings used for business.''

ORS 483.020 follows:

''As used in this chapter, except where the context otherwise requires:

\* \* \*

(1) 'Residence district' means the territory contiguous to a highway not comprising a business district when the frontage on such highway for a distance of 300 feet or more is mainly occupied by dwellings or by dwellings and buildings used for business.''

We have read the testimony with extreme care, but found it couched in terms so dubious of import that no finding could have been made that the area was either residential or business in character. Accordingly, the trial judge could not do other than give to the jury the third of the above alternatives. However, the instructions also gave to the jury the basic speed rule in the very words of ORS 483.102.

The above disposes of all assignments of error adversely to the appellant.

The judgment of the circuit court is affirmed.