Argued October 2, 1957, reversed and remanded January 15, 1958

# MARSHALL *v.* MULLIN
### 320 P. 2d 258

*G. G. Carlson,* Roseburg, argued the cause for appellant. On the briefs were Yates, Murphy & Carlson, Roseburg.

*Paul E. Geddes,* Roseburg, argued the cause for respondent. On the brief were Geddes, Felker, Walton & Richmond, Roseburg.

Before PERRY, Chief Justice, and ROSSMAN, BRAND, and McALLISTER, Justices.

## PERRY, C. J.

Plaintiff's decedent died as the result of a collision of the motorcycle which he was operating with an automobile driven by the defendant. Both vehicles were proceeding northerly on old highway No. 99 a few miles south of Roseburg. The collision occurred when the automobile driven by the defendant made a left turn at a point where Austin Road enters old highway No. 99, and at a time when the deceased was attempting to overtake and pass the automobile driven by the defendant.

Plaintiff alleged and introduced evidence to show defendant was negligent (1) in failing to keep a lookout, (2) in failing to keep his automobile under control, (3) in failing to give a signal of his intention to make a left turn, and (4) in making a turn without first determining that the movement could be made with safety.

Defendant denied negligence and alleged and introduced evidence to show the decedent was negligent (1) in failing to keep a lookout, (2) in failing to keep his motorcycle under control, (3) in operating his motorcycle at an excessive speed, (4) in attempting to pass at an intersection when the movement could not be safely made, and (5) without giving an audible signal of his intentions.

The plaintiff denied the new matter in the defendant's answer. The jury returned a verdict for the defendant and the plaintiff appeals from the judgment entered thereon.

■ The plaintiff assigns as error the failure of the

trial court to sustain his motion to strike from the record and direct the jury to disregard the question hereinafter set forth, which was asked by the defendant on cross-examination. Plaintiff had called to the witness stand Robert C. White, a state policeman, and on cross-examination the defendant asked the following question:

> "Q You recall, do you not, Officer, that you filed a complaint against the defendant in the District Court, criminally, for failure to signal for a left turn and that matter was tried and the defendant was acquitted. You testified there, didn't you?"

The trial court sustained the objection, but did not instruct the jury to disregard the implications of fact contained in the question.

There is no doubt but that the question asked was improper. Whether or not the defendant signaled his intention to turn left into Austin Road was an issue of fact for the jury's determination. The question tended to convey to the jury the thought that defendant had been found by another jury to have signaled when he was making the left turn. If it could be shown that one jury has held on the same evidence that he did give the signal, it can hardly be expected not to influence the considerations of another jury.

In *Guedon v. Rooney,* 160 Or 621, 644, 87 P2d 209, 120 ALR 1298, we quoted with approval the following statement of the annotator set out in 109 ALR 1085:

> " 'Improper questions may be prejudicial in various ways, including the following: They may plainly convey information excluded by the rules of evidence; may hint at the existence of significant though inadmissible facts, with or without a suggestion as to their exact nature; may, by the assumptions therein contained, and notwithstanding the an-

swers being prevented, impress upon the jury, by a mere show of proof, matters which are not admissible in evidence and which perhaps could not be proved, as inferred, even if opportunity were afforded; and may, by reason of the objections made, emphasize the facts suggested more effectively than might be done by answers admitted without objection.

" 'It seems to be the invariable quality of questions the asking of which may require a reversal that in themselves, and without any answers made, they call to the attention of, or suggest to, the jury some fact or claim prejudicial to the opposite party and concerning which counsel has no right to inquire.' "

■ "It is the general rule that a judgment of conviction or acquittal of a party charged with crime cannot be given in evidence in a civil action to prove or negative the facts upon which it was rendered." *Jenkins v. Jenkins,* 103 Or 208, 215, 204 P 165. And, while there has been a tendency to relax the rule where evidence of a prior conviction is tendered, there is no tendency to change the rule as it applies to proof of a prior acquittal. See 18 ALR2d 1315, Acquittal § 6.

Even though the trial court sustained the objection to the extent of not permitting an answer by the witness, and although we do not believe the defendant in asking the question intended impropriety, the question itself was highly prejudicial and the plaintiff, being in the dilemma of either seeking a mistrial or relying upon the court's admonition to correct the error, was entitled to have the jury admonished to disregard the question and not draw inferences therefrom.

■ The plaintiff assigns error in that, over his objection, a lay witness, although he did not observe the decedent's motorcycle as it traveled along the highway,

was permitted to testify to its speed in miles per hour from hearing the sound of the motor.

In 20 Am Jur 747, Evidence § 888, we find the following:

> "But while it is perhaps proper to permit a witness whose opinion is based upon sound to tell whether a train is going rapidly or slowly, the courts generally have held it improper to give estimates as to rate of speed, based entirely upon sounds arising from operation."

Thus, the general rule is that, while it is proper to permit a statement of opinion based upon impressions gained from sound alone, such opinion is limited to the witness's impression as to whether the movement was rapid or slow. While the citation refers to the movement of a train, we can observe no difference in principle and are satisfied it is a salutary rule that should apply also to the movement of motor vehicles. There should be no probative value in such opinion respecting a rate of speed in miles per hour. To permit such evidence where sight of the moving vehicle is not also present would be to allow such opinion to be considered as evidence to establish that a vehicle was or was not traveling in excess of an indicated or designated speed for a particular area, and change the application of the presumption attaching to our basic rule. See *Challinor v. Axton,* 246 Ky 76, 54 SW2d 600; *Campbell v. Sargent,* 186 Minn 293, 243 NW 142.

Since the errors just discussed require a reversal of the judgment, we will consider the other errors assigned in a summary manner for guidance in the retrial of the case.

The plaintiff complains of the admission of a map offered by defendant to establish the occurrence of the accident in or approaching a residential district, and,

also, of the giving of an instruction on indicated speed in such a district.

It is the contention of the plaintiff that the defendant's map was immaterial because it did not tend to prove the area where the accident occurred was a residential district and that the instruction given was abstract since the occurrence was not in a residential district. See discussion of abstract instructions in *Godvig v. Lopez,* 185 Or 301, 202 P2d 935.

■ It is not necessary for us to examine the evidence to determine whether or not the accident occurred in a residential district since it appears the confusion arises as to what constitutes a residential district as set forth in ORS 483.020. This statute reads as follows:

> "(1) 'Residence district' means the territory contiguous to a highway not comprising a business district when the frontage of such highway for a distance of 300 feet or more is mainly occupied by dwellings or by dwellings and buildings used for business."

We are of the opinion that other courts, which have considered statutes similar in context to this statute, have correctly determined that, since there are two sides of the highway upon which buildings may front, the total frontage to be considered is 600 feet, that is, 300 feet on each side of the highway, for the purpose of determining whether or not that area is "mainly occupied by dwellings or by dwellings and buildings used for business." That occupancy of the "frontage of such highway" refers to the space occupied only by the buildings and not to the surrounding grounds; and the word "mainly" in the statute refers to an occupancy by the buildings of a frontage of more than 50 per cent of the total. See *Utility Trailer Works v. Phillips,* 249 Ala 61, 29 So2d 289; *Krepcik v. Interstate*

*Transit Lines,* 154 Neb 671, 48 NW2d 839; *Floeck v. Hoover,* 52 NM 193, 195 P2d 86; *McGill v. Baumgart,* 233 Wis 86, 288 NW 799.

■ The question is also raised as to whether or not a residence in the course of construction may be considered as a dwelling in determining the occupied frontage along a highway.

We are of the opinion the word "dwellings" as used in the statute refers to buildings intended as a place of human habitation, reasonably capable of present occupancy.

■ The trial court, with reference to the contributory negligence of the deceased, gave the following instruction:

"Now, with reference to the charge of contributory negligence relative to the sounding of a horn by the decedent, the law provides that whenever the operation of a vehicle proceeding in the same direction may be affected by such action, that the driver of an overtaking vehicle shall give a clearly audible signal of his intention to pass the vehicle ahead of him by sounding his horn or other warning device before attempting to pass or passing such overtaken vehicle. If you find that the decedent, Marshall, did not sound a horn or other warning device before attempting to pass the defendant, and that the failure so to do proximately contributed to the accident, then decedent would be guilty of contributory negligence; and, if you should also find that such contributory negligence proximately contributed to the accident, then your verdict should be for the defendant, even though you should also find that the defendant was negligent in one or more of the respects charged in the plaintiff's complaint. In order to be effective as a defense, it would be necessary that such contributory negligence, if there was contributory negligence, on the part of the decedent was the proximate cause of or proximately contributed to his injuries and death."

The plaintiff excepted to this instruction on the ground it informed the jury that if the deceased failed to sound his horn he was guilty of negligence, without regard to whether or not the vehicle in front would be affected by his passing. It is plaintiff's contention that it was not negligent for decedent to fail to sound his horn if a reasonably prudent person would have believed, under the circumstances existing, the car he was overtaking would not be affected by his passing movement.

Subsection (4) ORS 483.310, before amendment by Ch 249, Oregon Laws 1955, read as follows:

"Whenever the operation of a vehicle proceeding in the same direction may be affected by such action, the driver of an overtaking vehicle shall give a clearly audible signal thereof by sounding the horn or other warning device before attempting to pass or passing such overtaken vehicle."

The trial court correctly stated the law, but the instruction as given might be susceptible of the interpretation sought by the plaintiff. The better practice would be to include in the instruction, when the statutory law is being applied to the facts of the case, the rule of the reasonably prudent person in like or similar circumstances.

This cause is reversed and remanded for a new trial.