Argued December 19, 1957, reversed and remanded
June 18, 1958

# PERDUE *v.* THE PACIFIC TELEPHONE AND TELEGRAPH COMPANY ET AL

326 P. 2d 1026

*George H. Fraser* argued the cause for appellants. With him on the brief were Hart, Spencer, McCulloch, Rockwood and Davies and Don H. Marmaduke, all of Portland.

*Frank H. Pozzi* argued the cause for respondent.

On the brief were Peterson & Pozzi, Gerald H. Robinson and Berkeley Lent, all of Portland.

Before Perry, Chief Justice, and Rossman, Brand and McAllister, Justices.

ROSSMAN, J.

This is an appeal by the defendants from a judgment in the amount of $12,500 which the circuit court entered in the plaintiff's favor after a jury returned a verdict for him. The defendants-appellants are the Pacific Telephone and Telegraph Company and one of its employees, Robert L. Glathar. The complaint charged that, through Glathar's negligent operation, a pickup truck, owned by the corporate defendant, collided with an automobile driven by the plaintiff, which was attempting to pass it, thereby injuring the plaintiff.

The defendants-appellants present four assignments of error. The first charges that the circuit court erred when it refused to direct a verdict for the defendants, and the second, which we will consider concurrently with the first, urges that error was committed when, at the close of defendants' case, the court refused to permit the defendants to amend their answer to conform it to the evidence.

Plaintiff's injury befell him January 20, 1954, at 10:00 p. m. in the intersection of Highway 99 and Coyote Creek road (Josephine county). The collision occurred when the right front fender of the automobile which the plaintiff was driving came into contact with the left rear fender of the truck. Both vehicles were moving southerly. Highway 99 pursues a northerly-southerly direction. Coyote Creek road does not cross Highway 99 but branches off its east side and then

proceeds southeasterly. The pavement of Highway 99 is 25 feet and four inches broad and adjacent to its east edge a graveled shoulder, 10 feet wide, affords further space for motorists. The width of the paved part of Coyote Creek road is 27 feet. The entrance of the latter road into Highway 99 is 162 feet wide.

A half mile or more north of the intersection just described Highway 99 runs through a community known as Wolf Creek. Before it enters that community from the north it makes a broad turn. Upon leaving Wolk Creek, and until after it has passed through the intersection where the collision occurred, Highway 99 is a straightaway.

The defendant, Glathar, was driving his employer's pickup truck in a southerly direction along Highway 99 and was entering the intersection, or about to do so, when the accident happened. We will hereafter speak of the corporate defendant as the telephone company and its vehicle as "the truck." Glathar's intention was to turn left into Coyote Creek road. As he neared the intersection, his rate of speed was 28 to 30 miles per hour. When he was 50 to 60 feet from the intersection he began to turn to the left and reduced his speed five miles per hour. The truck was not equipped with a signaling device, and Glathar neither extended his arm to the left so as to apprise other motorists of his intention, nor signify in any other way his contemplated movement. He explained his omission to have given a signal by saying that when he was 150 feet north of the intersection he looked into his rearview mirror and saw nothing except the headlights of a car which appeared to be 600 feet to his rear and, believing that it was too far distant to be affected by his turn, omitted to extend his arm.

While the truck was pursuing the course which we

just described, the plaintiff was driving his automobile in the same direction to the rear. He, however, did not intend to turn into Coyote Creek road. The plaintiff swore that he first saw the truck when he entered the straight stretch of Highway 99 south of Wolf Creek. He estimated that the truck was then 300 to 400 feet ahead of him. The plaintiff swore that his speed as he drove through Wolf Creek was 45 miles per hour and that he accelerated it to 50 miles as he entered the straightaway. Several witnesses who observed him estimated his speed as 80 to 100 miles per hour.

When Glathar's truck began to turn to the left, the plaintiff began to overtake it. Presently the right front fender of his car collided with the left rear fender of the truck. The plaintiff admitted that he did not precede his effort to pass the truck with a sound of his car's horn. He swore, however, that he indicated his intention by flicking on his bright headlights. He testified that when he was about 50 feet behind the truck he increased his speed to 55 to 60 miles per hour.

The collision occurred when the truck was crossing the center line of the pavement of Highway 99 and threw both vehicles out of control. Before the plaintiff's car came to a stop it had run the length of the intersection and, after leaving the roadway, had leaped across Coyote Creek to a rocky area where it came to rest. In the course of the car's uncontrolled movement, the plaintiff sustained injuries.

The plaintiff admitted that on the day of his injury he had partaken of a considerable quantity of beer. He also admitted that about 3:00 or 3:50 p. m. of that day he took a drink of whiskey. The testimony is capable of sustaining a finding that the plaintiff

was intoxicated at the time of the collision. He, however, swore that he took his last drink of alcoholic beverages not later than 4:00 p. m., and a police officer, who saw him about 8:00 p. m. in regard to "a little erratic driving," as a witness, expressed the opinion that the plaintiff was not then under the influence of alcohol. That witness observed a bottle half full of whiskey in the plaintiff's car and, upon mentioning it to the plaintiff, received an explanation that he was unaware of its presence in the car.

The defendants argue that they were entitled to a directed verdict because, according to them, the plaintiff was guilty of contributory negligence as a matter of law. The answer charged the plaintiff with the following: (1) failure to keep a proper lookout; (2) operation of his car at an excessive speed; (3) failure to keep his car under proper control; and (4) failure to give a proper signal of intention to pass the truck. Each of those charges was submitted to the jury.

After the defense rested, a motion was made to amend the answer to conform to the proof by adding an allegation that the plaintiff was negligent in attempting to pass a car at a road intersection. The denial of the motion is the basis of the second assignment of error.

■ Before undertaking to determine whether or not the court erred in denying defendants' motion for a directed verdict and for judgment notwithstanding the verdict, we will consider whether the court should have permitted the amendment. ORS 16.390 says:

> "The court may, * * * in furtherance of justice and upon such terms as may be proper, * * * at any time before the cause is submitted, allow such pleading or proceeding to be amended, by * * * or when the amendment does not substantially

change the cause of action or defense, by conforming the pleading or proceeding to the facts proved."

Evidence, received without objection and free from challenge, established the facts recounted in preceding paragraphs; that is, that the plaintiff undertook to overtake and pass the defendants' vehicle in a road intersection.

ORS 483.308(3) says:

"The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction * * * at any intersection of highways, unless such movement can be made in safety."

The fact that Coyote Creek road does not cross Highway 99 does not deny to the place where his injury befell the plaintiff the status of an intersection. ORS 483.012(2).

The trial judge, in denying the motion to amend, relied upon the following part of *Valdin v. Holteen, et al.*, 199 Or 134, 260 P2d 504:

"This statute does not prohibit the overtaking and passing of another vehicle at an intersection except only when such movement cannot be made in safety. Primarily, the statute contemplates a situation where there is cross-traffic at the intersection; that is, traffic entering the highway from the intersecting road, or where a vehicle is lawfully making a turn at the intersection. In the absence of some such conditions at the intersection, it is just as lawful to overtake and pass a slower moving vehicle at an intersection as it is at any other place on the highway. Whether such passing at an intersection can be made in safety depends in each instance upon the particular conditions existing at the time and place of passing, and is judged in each case by the standard of how the situation might appear to a reasonably prudent person in the exercise of due care."

In overruling defendants' motion to amend, the trial judge stated that ORS 483.308(3) "has application only to cars approaching an intersection at right angles," and, referring to the decision from which we just quoted, added: "It wouldn't be a proper element or proper specification, and I would have to withdraw it from the jury as long as that decision stands."

It is apparent that *Valdin v. Holteen, et al.*, supra, induced the trial judge to believe that ORS 483.308(3) is applicable only in the event that cross traffic is moving in the intersection. Based upon that construction of 483.308(3), the motion to amend was overruled. We cannot say that the Valdin decision does not lend some countenance to the trial judge's interpretation of it.

We do not believe that ORS 483.308(3) is applicable only to situations in which cross traffic is present in the intersection. The Valdin opinion expressly provided for a case in which a vehicle is lawfully making a turn in the intersection. The fact that the overtaken vehicle is making an unlawful turn does not render the statute nugatory by permitting the other driver to attempt to pass it, whether or not the movement can be made in safety. ORS 483.308(3), referring to the attempt by the overtaking vehicle to pass the one ahead, says: "unless such movement can be made in safety." If the car ahead failed to give a signal required by law, which, if given, would have affected the operation of the overtaking vehicle, such fact could readily have a bearing upon the issue as to whether or not "such movement can be made in safety."

ORS 483.308(3) requires the driver of an overtaking vehicle (1) to exercise reasonable watchfulness in apprising himself of the attendant circumstances, and (2) to pay the heed to such circumstances as a

reasonably prudent person would in determining whether or not the passing can be made in safety.

■■ Although the plaintiff was entitled to assume, until he had notice to the contrary, or, in the exercise of reasonable care would have had notice to the contrary, that the driver of the truck would obey the rules of the road, the jury could have found, had the issue been submitted to it, that the truck indicated a purpose to turn to the left by (1) slowing its speed as it approached the intersection, and (2) veering its course to the left as it entered the intersection. Had the jury so found, it could have concluded that reliance upon the assumption that signals required by law would be given was no longer justifiable.

Whether or not the plaintiff gave a visual signal and, if he did, whether it was sufficient to persuade a reasonable man that he could thereafter overtake the truck "in safety," were questions for the jury.

■ The plaintiff argues that the trial judge's decision to deny permission to amend was based upon a finding that the plaintiff did not overtake and pass any vehicle "at any intersection." The argument, in our belief, is unsubstantiated. There was sufficient evidence in the record to submit to the jury the question of whether or not the plaintiff attempted to pass "at" an intersection. *Field v. Webber,* 132 Me 236, 169 A 732, in construing a similar statute, said:

"The inhibition of the statute is that a motor vehicle must not attempt to pass another, proceeding in the same direction, at any intersection of streets. Traffic statutes are given a reasonable construction. 'At' is a word of somewhat indefinite meaning, whose significance is generally controlled by the context and accompanying surroundings. Used in reference to place, it often means 'in' or 'within,' but its primary sense encases the idea of 'nearness'

or 'proximity.' 4 Cyc., 365. * * * 'one who drives out of a single file of cars in motion just before entering a street intersection, and proceeds abreast of it, violates a traffic ordinance forbidding attempts to pass vehicles, "at a street intersection." ' Headnote, Crosby v. Canino, 78 A.L.R., 1202; 89 Colo., 434, Pac.(2d) 792."

Permitting or refusing amendments to the pleadings is within the discretion of the trial court. Generally, the further a case proceeds, the more reluctant the courts are to permit amendments. *Elliott v. Mosgrave,* 162 Or 507, 91 P2d 852, 93 P2d 1070. However, in the case at bar, the trial judge did not exercise discretion in weighing the factors which determine whether or not the motion to amend was timely, but, under his interpretation of the holding in *Valdin v. Holteen, et al.,* supra, believed that the subject matter of the proposed amendment was immaterial. He, therefore, overruled the motion to amend. The omission to exercise discretion in situations such as this is reviewable in this court. *Martin v. Bank of Fayetteville,* 131 NC 121, 42 SE 558. As we have indicated, the circuit court was in error in failing to exercise its discretion. It being impossible to correct the situation by ordering the lower court to exercise its discretion, we believe it is for this court to determine whether the amendment should have been allowed. *Lake v. Sweet,* 63 Hun 636, 18 NYS 342. The proposed amendment related to the same general acts that were set forth in the answer and, therefore, would not have "substantially" changed the defense, as the quoted word is employed in ORS 16.390, supra, Clark on Code Pleading, 2d ed., 718, and *Elliott v. Mosgrave,* supra.

If this court concludes that the amendment should have been granted, the decisive question is whether the

refusal of the trial judge to have allowed the amendment was prejudicial. *Elliott v. Mosgrave*, supra, held that liberality in allowing amendments should be favored, especially when allowance does not deprive the adversary of adequate opportunity to submit his evidence.

■ In the present case, all of the evidence which described the operation of the two vehicles had been received without objection when the defendants sought to amend. Several photographs and a large plat, upon which extensive entries were made during the course of the trial, graphically portrayed for the jury the movement of the two vehicles in the intersection. The amendment would merely have afforded the trial judge a basis upon the pleadings for instructing the jury upon the law which governs a driver who seeks to pass in an intersection a car moving in the same direction. *Sherrard v. Werline*, 162 Or 135, 91 P2d 344, Randall's Instructions to Juries, § 128, and 88 CJS Trial, § 381(e), are capable of justifying a holding that, since evidence which was received without objection and which remained unchallenged, showed that the plaintiff undertook to overtake the defendants' truck in an intersection, the trial judge could properly have stated to the jury the essence of ORS 483.308(3), even in the absence of amendment of the answer. We believe that the amendment should have been allowed.

■ The defendants' main contention is that the plaintiff was contributorily negligent as a matter of law in that, according to the defendants, he violated ORS 483.308(3), ORS 483.992 and ORS 483.310(4) as the latter section appeared when the collision occurred in 1954. For its form at that time, see ORS Replaced Chapters 1953. Oregon Laws 1955, ch 249, § 3, which was approved by the Governor April 11, 1955, the

same day that the verdict was returned, repealed the part of ORS 483.310, reading as follows:

"(4) Whenever the operation of a vehicle proceeding in the same direction may be affected by such action, the driver of an overtaking vehicle shall give a clearly audible signal thereof by sounding the horn or other warning device before attempting to pass or passing such overtaken vehicle."

The 1955 act did not become effective until August 3, 1955. ORS 483.310(2) provides:

"The driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on suitable and audible signal, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

A preceding paragraph quotes ORS 483.308(3), but for the sake of convenience we quote it again:

"The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction * * * at any intersection of highways, unless such movement can be made in safety."

What we have already said indicates that, in our belief, the issue as to whether ORS 483.308(3) was violated was for the jury.

ORS 483.992(2) says:

"Any person who, * * * while intoxicated or under the influence of intoxicating liquor * * * drives any vehicle upon any highway * * * shall be punished, * * *."

We will now consider whether all reasonable men would conclude from the evidence that either or both ORS 483.310(4) and 483.992 were violated by the plaintiff and that such violation or violations were a proximate cause of his injury.

We are unable to say that the trial judge could have taken the issue of intoxication from the jury in the face of plaintiff's testimony that he had taken his last drink at 4:00 p. m., six hours before the collision, and the testimony of the police officer that, in his opinion, the plaintiff was not under the influence of intoxicating liquor at 8:00 p. m., two hours before the collision. Even if the court could conclude that the plaintiff was intoxicated, the evidence was not conclusive that intoxication was a cause of the collision.

■ The question remains whether or not the plaintiff's violation of ORS 483.310(4), quoted above, was (a) negligence and (b) a proximate cause of his injury. The section of our laws just cited, which was in effect when the plaintiff attempted to overtake the truck, required him to "give a clearly audible signal * * * by sounding the horn or other warning device before undertaking to pass," provided the operation of the truck would be "affected" by the contemplated passing movement. The plaintiff's (respondent's) brief says:

"* * * respondent admitted that he did not sound his horn to advise appellants of his intention to overtake and pass their truck."

Without citing them once more, we state that many decisions of this court hold that violation of a safety measure, such as ORS 483.310(4), is negligence per se. The question remains, however, as to whether or not the situation disclosed by the above-mentioned evidence showed that the operation of the truck would be "affected" by the passing operation which the plaintiff had in mind.

The statute required the sounding of an audible signal before attempting to pass a vehicle "whenever the operation of a vehicle proceeding in the same direc-

tion may be affected by such action." The determination of whether the statute had been violated was for the jury, if the latter could have found that a reasonable man in the plaintiff's position would have concluded that the operation of the truck might be affected by the passing movement. In determining whether such a finding was permissible, we must consider all the evidence, especially the plaintiff's testimony that he gave a visual signal.

■ In our opinion, the jury could not have found that a reasonable man might conclude, after giving a visual signal, that the operation of the overtaken truck would not be affected by the passing movement. ORS 483.310(4), as we have just seen, says:

> "Whenever the operation of a vehicle proceeding in the same direction may be affected by such action, the driver of an overtaking vehicle shall give a clearly audible signal thereof by sounding the horn or * * *."

The statute was designed to promote safety. It does not qualify the word "affected" by the use of the adverb "adversely." There is no reason to believe that the legislature impliedly intended to qualify the circumstances in which it expressly demanded certain minimal behavior.

■ It appears, therefore, that the trial court should have decided that ORS 483.310(4) was violated. Such a violation is negligence per se. Although that section of our laws was disobeyed, it does not follow as a matter of law that the violation was the proximate cause of the plaintiff's injury. We think that the issue upon that score was for the jury.

For the above reasons, we hold that the first assignment of error is without merit; that is, we cannot say as a matter of law that the plaintiff's failure to

have given an audible signal was the cause of his injury. We, however, believe, as indicated in previous paragraphs, that the second assignment of error reveals merit; it is sustained.

We deem it unnecessary to set forth herein an analysis of the third and fourth assignments of error. Both are based upon instructions requested by the defendants which were not given. Each is governed by well-established principles of law and, therefore, if the cause is tried again, we assume that no difficulty will be encountered with the instructions.

For the error above mentioned, the challenged judgment is reversed. The cause is remanded.

Mr. Justice BRAND did not participate in this decision.