Argued November 20, 1958, reargued October 8, reversed and
remanded October 30, 1959

# VOIGHT *v.* NYBERG

345 P. 2d 821

*Sam Kyle,* Albany, argued the cause for appellant. With him on the brief were Weatherford and Thompson, Albany.

*Asa L. Lewelling,* Salem, argued the cause and filed a brief for respondent.

McALLISTER, C. J.

This is an action to recover damages sustained when an automobile operated by the plaintiff, Richard A. Voight, allegedly was forced off the road and into a ditch by a station wagon owned and operated by the defendant, Willis Nyberg. The jury returned a verdict for the defendant and from the judgment based thereon, plaintiff has appealed. Plaintiff contends that the trial court erred in its instructions to the jury.

The accident occurred on January 17, 1953, on a paved two-lane highway a short distance east of Crawfordsville in Linn county. It was raining at the time of the accident. The highway runs east and west and at a point about one-fourth mile east of Crawfordsville is intersected from the south by the Brush Creek road. The plaintiff and defendant disagree as to how the accident occurred and we will first set out the plaintiff's version.

Plaintiff testified that he was traveling west at a speed of about 50 miles per hour and overtook defendant's station wagon which was traveling ahead of him in the same direction at a speed of about 35 miles per hour. Plaintiff followed the station wagon until the two vehicles had passed the last curve east of Crawfordsville and reached the straight stretch lead-

ing into town. Plaintiff then sounded his horn twice, speeded up, turned out to the left and started to pass defendant. The vehicles were then about 400 feet east of the Brush Creek road. The view ahead was clear into Crawfordsville and there were no oncoming cars. When plaintiff's vehicle was in the left hand lane with the front thereof only about 10 feet from the rear of defendant's vehicle, the defendant, without any warning, turned into the left lane directly in front of plaintiff. Plaintiff immediately applied his brakes and his car skidded straight forward still gaining on defendant's vehicle. To avoid hitting the rear of defendant's vehicle, plaintiff swerved back to his right. At about the same time, defendant first realized that plaintiff was attempting to pass and also swerved into the right lane again blocking the path of plaintiff's vehicle. In a further effort to avoid a collision, plaintiff turned still farther to the right and when his car hit the gravel shoulder it skidded into the ditch and upset. Ironically, the two vehicles had never collided.

According to defendant he intended to turn left when he reached the Brush Creek road. He testified that as he rounded the last curve east of Crawfordsville, he turned on his blinker light to indicate his intention to make a left turn. When defendant reached the straight stretch leading into Crawfordsville and could see that there were no cars coming toward him, he turned his car over into the left lane. Defendant admitted that he could not see behind him because the rear window of his station wagon was covered with mud. Defendant said that he "started to get on the left side of the road" when he was still a considerable distance from the Brush Creek road so that "if there was any traffic behind me it could go around to my right." Defendant claimed that he did not hear

plaintiff's horn. Defendant's vehicle was about half-way across the yellow line when he first heard the sound of plaintiff's car on the wet pavement behind him. He immediately pulled back to the right far enough to leave room for plaintiff's car to pass him on either side. No collision occurred and when defendant reached the Brush Creek road, he turned to the left. After making the turn defendant looked back, saw plaintiff's vehicle overturned in the ditch and returned to the scene of the accident. He estimated that plaintiff's vehicle came to rest about 50 to 100 feet east of the intersection. We quote a portion of defendant's testimony:

"Q What did you do?

"A As I went around the turn, my rear window was covered with mud, and I couldn't see through the rear window. As I went around the curve and seen there was no traffic that would hinder me from making a left turn, I started to get on the left side of the road, so if there was any traffic behind me it could go around to my right. As I got approximately half way across the yellow line, I could hear the splatter of water from the wheels on this other car, so I immediately pulled back so my left wheels were on the right hand side of the road, figuring it would give him enough room either way to pass me."

■ The only error assigned by plaintiff is the giving of the following instruction:

"The defendant was only required in this case to keep to his right half of the highway when meeting oncoming traffic. Therefore, defendant was not negligent solely by the act of driving to the left of the center line. If plaintiff would require defendant to give way to the right or keep to his right half of the highway, he must give a clearly audible signal of his intention to overtake

and pass. If you find that plaintiff failed to give a clearly audible signal of his intention to overtake and pass defendant, plaintiff was negligent. And if that negligence of plaintiff contributed in any degree, no matter how slight, to the accident here in question, the plaintiff cannot recover, and your verdict must be for the defendant."

The foregoing instruction was clearly erroneous. The first sentence stating that defendant was only required to keep to the right half of the highway when meeting oncoming traffic directly contradicts the applicable statute which required defendant, before turning from the right side of the road, to see that such movement could be made in safety. The statute read as follows:

"ORS 483.126. (1) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety. * * * Whenever the operation of any other vehicle may be affected by such movement he shall give a proper signal which is plainly visible to the driver of such other vehicle of the intention to make such movement.

"(2) The signal required by subsection (1) of this section shall be given either by means of the hand and arm or by an approved mechanical or electrical signal device. However, when a vehicle is so constructed or loaded as to prevent the hand and arm signal from being visible both to the front *and rear,* the signal shall be given by a device of a type approved by the Secretary of State." (Italics supplied)

The vehicles which may be affected by the movement of the vehicle starting, stopping or turning from a direct line include vehicles approaching from the rear. This is made clear by paragraph (2) which specifically provides that the signal to the driver of the vehicle

affected by the movement must be visible both to the front *and rear.*

The term "in safety" as used in the above section is not limited to the safety of the driver of the vehicle starting, stopping or turning from a direct line, nor to the safety of the drivers or occupants of oncoming cars, but includes the safety of all other people on the highway, including the drivers and occupants of vehicles approaching from the rear. See *Miller v. Lowe,* 220 Iowa 105, 261 NW 822.

This court also has held in a case involving facts somewhat similar to those in the case at bar that the protection of a statute similar to ORS 483.126 extends to a car approaching from the rear. In *Valdin v. Holteen and Nordstrom,* 199 Or 134, 154, 260 P2d 504, the plaintiff was proceeding along a straight stretch of highway and overtook the defendant who was proceeding on the highway ahead of him. As the two vehicles approached an intersecting road, plaintiff turned to the left side of the highway and was passing defendant's vehicle as they reached the intersection. Plaintiff contended that defendant caused the two vehicles to collide by attempting to make a left turn at the intersection without having given an appropriate signal. The applicable statute, now ORS 483.308, read as follows:

> "* * * * * *
>
> "(3) The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction * * * at any intersection of highways, *unless such movement can be made in safety.*" (Italics supplied)

In applying the above statute to the facts in that case, this court said:

> "The same duty is imposed upon a driver of a

motor vehicle to anticipate the lawful passing of vehicles from the rear as it is to anticipate traffic from the front and at intersections; especially is this true of the driver of a slow-moving vehicle."

■ The defendant in this case admitted that the rear window of his vehicle was covered with mud and that he could not see through it. This is not a case where the forward vehicle had been traveling on the left side of the highway for sometime before the following vehicle overtook it. Defendant admits that as he turned from the right to the left side of the highway, plaintiff was in the act of passing. Under these circumstances it was clearly prejudicial for the trial court to tell the jury that "in this case" defendant was only required to keep to the right half of the highway when meeting oncoming traffic and was not negligent merely because he drove to the left of the center line. A driver who cannot see to the rear and who, without warning, turns a slower moving vehicle to the left side of the highway directly into the path of a vehicle engaged in passing is clearly negligent and the jury should not have been instructed to the contrary.

Defendant argues that the instruction quoted above, which the trial court gave at his request, was a correct statement of the law and relies on the following cases: *Weinstein v. Wheeler,* 135 Or 518, 295 P 196, 296 P 1079; *Hartley v. Berg,* 145 Or 44, 25 P2d 932; *Spence, Adm'x, v. Rasmussen et al.,* 190 Or 662, 226 P2d 819; *Whelpley v. Frye, Adm'x,* 199 Or 530, 263 P2d 295 and *Biddle v. Mazzocco,* 204 Or 547, 284 P2d 364. These cases stand generally for the rule first stated in 1931, in an opinion by Mr. Justice Rossman in *Weinstein v. Wheeler,* supra, as follows:

"* * * Rules of the road similar to ours, which require the operation of automobiles upon

the right-hand side of the roadway, do not contemplate strict compliance with their provisions except when a car meets and passes another coming from the opposite direction: [Citing Cases.]"

The statement made in the Weinstein case has been repeated or approved in the later cases cited by defendant. The Weinstein and subsequent cases cited were dealing with the statute, now ORS 483.302, requiring vehicles to be driven on the right half of the highway. None of the cases cited involved the application of ORS 483.126 to a vehicle overtaking and attempting to pass another vehicle proceeding in the same direction. The rule announced in Weinstein does not authorize the driver of the forward vehicle to violate the provisions of ORS 483.126 when turning from one side to the other side of the highway. The statute requires the driver of the forward vehicle before turning from a direct line to see that such movement can be made in safety and if any other vehicle may be affected, to give a proper signal. The legal duty is fixed by statute and Weinstein and the subsequent cases cited by defendant have no application to the facts of this case.

The instruction objected to in this case was also erroneous in other particulars. The third sentence stated in effect that if plaintiff wanted defendant to keep to the right half of the highway he had to "give a clearly audible signal of his intention to overtake and pass." This language advised the jury that defendant was free to turn to the left without any lookout for vehicles approaching from the rear, unless he was given actual notice that plaintiff intended to pass. The instruction required plaintiff not only to give a signal but at his peril to make certain that it had been heard. This placed on the driver of the

passing car too great a duty. It seems to be a well established rule of law that the driver of a passing car is under no obligation to make certain that his clearly audible signal is heard and understood by the driver of the overtaken vehicle. *Johnson v. Kinnan*, 195 Iowa 720, 192 NW 863 (1923); *McWright v. Providence Telephone Co.*, 47 RI 196, 131 A 841 (1926); *McLaughlin v. Curry*, 242 Mich 228, 218 NW 698 (1928); *Banta v. Hestand*, 181 Okla 551, 75 P2d 415 (1938); *Clayton v. McIlrath*, 241 Iowa 1162, 44 NW2d 741, 27 ALR2d 307 (1950); *Werner Transp. Co. v. Zimmerman*, 201 F2d 687 (7th Cir) (1953); *Alexander v. Cowart*, 58 NM 395, 271 P2d 1005.

In *McLaughlin v. Curry*, supra, the question was whether plaintiff, the driver of the passing car, had been contributorily negligent. Defendant's counsel assigned as error the refusal of the court to instruct the jury that plaintiff was required to assure himself that his signals were heard and understood by the driver of the overtaken vehicle. In holding that the trial court correctly refused to give such instruction, the court said:

> "* * * To follow defendant's contention would place on the driver of the passing car too high a degree of care. It was not required by the motor vehicle law then in force, and just how the driver of the passing car would be assured that his signal was heard and understood is not pointed out. The stoic driver who pays attention to his driving, and his driving alone, would never be passed, except at the peril of the driver of the passing car, and the slow-moving vehicle would hold up the traffic indefinitely, except for those of the more adventuresome type who would be required to assume the responsibility of anything and everything which might happen, and be held guilty of negligence,

which would bar their recovery for any and all damages, irrespective of the negligence of the driver of the car passed. We cannot subscribe to this doctrine."

In *Califf v. Norman,* 210 Or 198, 206, 310 P2d 319, this court quoted with approval from *McWright v. Providence Telephone Co.,* supra, as follows:

"* * * Plaintiff properly could assume that defendant's driver would recognize plaintiff's right to pass after his signal had been given."

■■ The fourth sentence of the instruction objected to in this case erroneously advised the jury that plaintiff was negligent if he failed to give a clearly audible signal of his intention to pass defendant's vehicle. When this accident occurred ORS 483.310 contained a paragraph (4) which read as follows:

"Whenever the operation of a vehicle proceeding in the same direction may be affected by such action, the driver of an overtaking vehicle shall give a clearly audible signal thereof by sounding the horn or other warning device before attempting to pass or passing such overtaken vehicle."

The foregoing paragraph required the driver of the overtaking vehicle to give a clearly audible signal *only* when the operation of the overtaken vehicle might be affected by the passing operation. Whether the operation of the overtaken vehicle may be affected so as to require a horn signal is a question for the jury to be determined by the application of the standard rule of what a reasonably prudent person would do under the same or similar circumstances. See *Perdue v. Pac. Tel. & Tel. Co.,* 213 Or 596, 609, 326 P2d 1026 and *Marshall v. Mullin,* 212 Or 421, 428, 320 P2d 258. The instruction in this case erred in requiring the driver of the overtaking vehicle to give a clearly audible

signal regardless of whether the overtaken vehicle might be affected or not.

■■ The duties resting on plaintiff and defendant to exercise reasonable care and to comply with the applicable statutes were reciprocal. Neither was an insurer of the safety of the other. It is worth noting however, that paragraph (4) of ORS 483.310 quoted above was repealed by Oregon Laws 1955, ch 249. The repeal of this provision emphasizes the duty of the driver of the overtaken vehicle before starting, stopping or turning to see that the movement can be made in safety.

■ It is true, as pointed out by defendant, that the court had instructed the jury that the duty rested on defendant before turning his car to the left to see that such movement could be made in safety. However, the first two sentences of defendant's requested instruction which was given last were completely inconsistent with the instruction given earlier. Moreover, the prejudicial error contained in the remainder of the instruction was never offset by any proper instruction. This court has held in numerous cases that the giving of inconsistent instructions upon a material issue is reversible error. See *Malloy v. Marshall-Wells Hardware Co.,* 90 Or 303, 173 P 267, 175 P 659, 176 P 589; *Houston v. Maunula et al.,* 121 Or 552, 255 P 477; *Smith v. Laflar,* 143 Or 65, 20 P2d 391; *Seipp v. Howells,* 146 Or 637, 31 P2d 188; *Peters v. Consolidated Freight Lines,* 157 Or 605, 73 P2d 713; *Fehley v. Senders,* 170 Or 457, 135 P2d 283; *Barnes v. Davidson et al.,* 190 Or 508, 528, 226 P2d 289; *Williams et al. v. Portland Gen. Elec.,* 195 Or 597, 247 P2d 494; and *Bernaski v. Liudahl,* 209 Or 553, 307 P2d 510. Defendant has cited no authorities to the

contrary. Certainly, the instruction here went to the very crux of the case and was both erroneous and prejudicial.

The judgment is reversed.

O'CONNELL, J., dissenting.

I dissent. The majority opinion holds that reversible error was committed by including in the instruction the statement that "The defendant was only required in this case to keep to his right of the highway when meeting oncoming traffic." I agree that the sentence standing alone is not an accurate statement of the law. However, it must be read in the whole context of the instruction dealing with the defendant's duty in turning from a direct line of travel. The trial court went on to say that:

> "* * * Therefore, defendant was not negligent *solely* by the act of driving to the left of the center line." (Emphasis supplied)

This qualified the preceding sentence by informing the jury that there could be circumstances under which the defendant would be required to keep to his right. The instructions described this duty more particularly. These instructions were as follows:

> "* * * If it appears by a preponderance of the evidence that the plaintiff intended to pass the car driven by the defendant and the defendant had not signaled he was intending to turn to the left and the parties were in a position several hundred feet from the intersection of Brush Creek road and there was ample time and distance to pass before reaching that intersection, then the plaintiff had a right to pass the car driven by the defendant and he would not be negligent in so attempting to pass. If the plaintiff was in the act of overtaking and passing the car driven by the defendant in a lawful manner, the law provides

it was the duty of the defendant to give way to the right in favor of the overtaking vehicle on suitable and audible signal and that he should not increase the speed of his vehicle until he was completely passed by the overtaking vehicle. If the plaintiff was attempting to pass and had to get his car at the speed necessary to pass to go around the car of the defendant, and if the defendant, without signal to the plaintiff, drove his car to the left and across the center line in front of the car being driven by the plaintiff, that would be negligence on the part of the defendant.

\* \* \* \* \*

"It was the duty of the defendant in this case, before turning his car to the left and across the center of the paved portion of the highway, to first see such movement could be made with safety. If he failed to do that and made such turn across the center line of the highway and in front of plaintiff's car while plaintiff was lawfully passing the same, that would be negligence on the part of the defendant."

The trial court read to the jury ORS 483.450 requiring a rear view mirror or other device "as to enable the driver thereof to have such a clear and unobstructed view of the rear at all times and under all conditions of load as will enable him to see any other vehicle approaching from not less than 200 feet in the rear on an unobstructed road"; and also read ORS 483.452 prohibiting the obstruction of the windows on a vehicle. The court then instructed the jury that:

"If you should find that the defendant failed to comply with either of the sections of the statute and that such failure was the proximate cause of the accident, then such conduct of the defendant would constitute negligence in and of itself."

The foregoing instructions were then followed by the instruction set out in the majority opinion.

Reading these instructions as a whole the jury certainly would have understood that the defendant had no right to turn to the left unless he complied with the statutory requirements and exercised the precaution to first see that the movement "could be made with safety." We have held repeatedly that a single erroneous instruction is not reversible error if the instructions as a whole correctly state the applicable law. *Whitehead v. Montgomery Ward & Co.*, 194 Or 106, 239 P2d 226 (1952); *Cade v. Thompson*, 190 Or 242, 225 P2d 396 (1950); *Parmentier v. Ransom*, 179 Or 17, 169 P2d 883 (1946); *Yarbrough v. Carlson*, 102 Or 422, 202 P 739 (1921).

A more serious problem is presented by the following portion of the disputed instruction:

> "If plaintiff would require defendant to give way to the right or keep to his right half of the highway, he must give a clearly audible signal of his intention to overtake and pass. If you find that plaintiff failed to give a clearly audible signal of his intention to overtake and pass defendant, plaintiff was negligent."

The majority opinion states that "This language advised the jury that defendant was free to turn to the left without any lookout for vehicles approaching from the rear, unless he was given actual notice that plaintiff intended to pass." I do not think that this is a fair interpretation of the instruction. The preceding instructions spelled out the defendant's duty in making a left turn including the duty "to first see such movement could be made with safety." Considering the instructions as a whole the jury must have understood that the defendant and plaintiff had reciprocal duties. The instruction did not explain whether or not the audible signal would have to be heard. The

statutory duty which the trial judge was attempting to explain simply provides that:

"Whenever the operation of a vehicle proceeding in the same direction may be affected by such action, the driver of an overtaking vehicle shall give a clearly audible signal thereof by sounding the horn or other warning device before attempting to pass or passing such overtaken vehicle." ORS 483.310 (4).

The instruction was given in terms of the statute and like the statute it was silent as to whether there was a duty to give actual warning.

"Where violation of any of the specific duties defined in these statutes appears, it is, of course, appropriate to instruct in the language of the statute." *Brindle v. McCormick Lbr. & Mfg. Co.,* 206 Or 333, 337, 293 P2d 221 (1956).

The requirement that an audible signal be given is susceptible to two meanings; (1) that the operator of the overtaking vehicle give a signal which is heard by the overtaken vehicle, *Swinkels v. Wisconsin Michigan Power Co.,* 221 Wis 280, 267 NW 1 (1936); or (2) that the duty is satisfied if the signal is capable of being heard irrespective of whether the operator of the overtaken vehicle hears it, *Werner Transp. Co. v. Zimmerman,* 201 F2d 687 (7th Cir 1953); *McLaughlin v. Curry,* 242 Mich 228, 218 NW 698 (1928); *Raymond v. Haught,* 102 Ohio App 337, 143 NE2d 731 (1956). The plaintiff's exception did not attack the instruction on the ground that it left uncertain the meaning of the word "audible"; his objection was that the instruction was "broader than the statute," for the reason that "It is only when other cars are to be affected that that [instruction] should be given."

Nor was the instruction defective on the ground

urged by plaintiff; it stated that the plaintiff had a duty to give an audible signal "If the plaintiff would require defendant to give way to the right or keep to his right half of the highway," which was a specific way of describing how the defendant would be affected by the giving of a signal by plaintiff.

If the instruction was subject to attack on the score of breadth, it was not for the reason stated in the plaintiff's exception, but because it stated the duty to give a signal upon attempting to pass, without limiting the duty to circumstances in which a reasonable man would give warning. There is language in *Spence v. Rasmussen,* 190 Or 662, 226 P2d 819 (1951) which supports the view that the statutory duty to give a signal is absolute under such circumstances. In that case the court said:

> "* * * Moreover, there is no evidence, nor is there any claim that defendant Hames gave decedent any audible warning with his horn or other warning device as he approached the bicycle. The giving of this warning is a condition precedent to the statutory right to pass, and even if defendant Hames had been in the act of attempting to pass, by reason of his failure to give the warning, any duties that might otherwise have been imposed upon decedent under the statute were never brought into being. Hence no question of 'right of way' ever arose as between defendants' truck and the bicycle." 190 Or at 686.

This may state the duty too broadly. *Marshall v. Mullin,* 212 Or 421, 320 P2d 258 (1958) casts some doubt on the rule stated in the Spence case. There the court said:

> "* * * It is plaintiff's contention that it was not negligent for decedent to fail to sound his horn if a reasonably prudent person would have believed,

> under the circumstances existing, the car he was overtaking would not be affected by his passing movement."

[ORS 483.310 (4) was set out]

> "The trial court correctly stated the law, but the instruction as given might be susceptible of the interpretation sought by the plaintiff. The better practice would be to include in the instruction, when the statutory law is being applied to the facts of the case, the rule of the reasonably prudent person in like or similar circumstances." 212 Or at 429.

This statement can be taken to mean that although it is the "better practice" to qualify the instruction in terms of the duty of a reasonable man, it is not reversible error if the qualification is not given.

Assuming that the instruction with respect to the operator's statutory duty expressed in ORS 483.310 (4) should be cast in terms of the duty of a reasonable man, we must decide whether the failure to so qualify the instruction in the present case constituted reversible error. According to plaintiff's testimony, he began his attempt to pass defendant when he was about one-tenth of a mile from the intersection at which defendant turned. He stated that he blew his horn twice when he was about thirty or forty feet behind the plaintiff. The defendant testified that he signaled a left turn on his directional light signal approximately fifty feet from the curve in the road which preceded the intersection. The curve was approximately one hundred yards east of the intersection. Plaintiff estimated that he was eight feet from the left side of defendant's automobile when defendant turned into the left half of the highway. On the basis of this evidence could the jury have found that the plaintiff

would not have violated ORS 483.310 (4) had he failed to give an audible signal?

On the basis of this evidence I think that it could be said as a matter of law that the operation of defendant's vehicle would "be affected" by plaintiff's passing movement. This would certainly be true if we apply the statute as we did in *Perdue v. Pacific Tel. & Tel. Co.*, 213 Or 596, 326 P2d 1026 (1958). In that case the fact that the following driver blinked his headlights to indicate that he desired to pass conclusively established that he was aware that the passing movement would "affect" the operation of the vehicle preceding him. Plaintiff's testimony that he sounded his horn could be given the same effect here. But whether we regard the Perdue case as controlling or not, I do not think that the instruction should be regarded as reversible error. As already indicated, the instruction was not attacked on the ground that it failed to qualify the statement of plaintiff's duty in terms of the duty of a reasonable man. If a defective instruction is assigned as error the appellant should make known his specific objection to the instruction in making his exception. *Garrett v. Eugene Medical Center*, 190 Or 117, 224 P2d 563 (1950); *Wilson v. State Ind. Acc. Comm.*, 189 Or 114, 219 P2d 138 (1950); *Lee v. Hoff*, 163 Or 374, 97 P2d 715 (1940); *Weinstein v. Wheeler*, 135 Or 518, 257 P 20, 271 P 733, 295 P 196, 296 P 1079, 15 P2d 383 (1931). It is especially important to enforce that rule where there are cases in our reports which tend to support the theory expressed in the instruction and upon which theory the trial court may have formulated the instruction. As I have already indicated, there were at least three Oregon cases (see supra, *Perdue v. Pacific Tel. & Tel. Co., Marshall v. Mullin, Spence v. Ras-*

*mussen*) which could be regarded as permitting the instruction given in this case with respect to the duty under ORS 483.310 (4). Considering the instructions as a whole I think that the jury would understand that plaintiff and defendant had reciprocal duties to each other and it concluded that the defendant discharged his duty or that the plaintiff did not act reasonably in attempting to pass.

The majority opinion states that "A driver who cannot see to the rear and who, without warning, turns a slower moving vehicle to the left side of the highway directly into the path of a vehicle engaged in passing is clearly negligent." If the facts in this case were as recited in the statement above, clearly the defendant would be liable. But the statement can be regarded as representing the facts in this case only if we disregard the defendant's testimony. Defendant testified that he turned on his directional blinker light to indicate his intention to make a left turn. This was done more than 100 yards to the east of the intersection at which he intended to turn. Further, there was some evidence from which the jury could have concluded that defendant could and did see to the rear before attempting to turn. I dissent.

PERRY, J., concurs in this dissent.